## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DEREK J. HARVEY,                            *

      Plaintiff,                          *

      v.                                  *               Civil Action No. RDB-20-3068

CABLE NEWS NETWORK, INC.,                   *
LEV PARNAS, and JOSEPH A.
BONDY,                                      *

      Defendants.                         *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

This case arises from the continued litigation[1] of Congressman Devin G. Nunes of California with respect to media coverage of his political efforts in support of former President Donald J. Trump. In this case, the Plaintiff Derek J. Harvey ("Harvey" or "Plaintiff"), a resident of Maryland and Senior Advisor to Congressman Nunes, alleges that he personally has been falsely accused of "participating in an effort to aid and abet the commission of criminal, unethical, and dishonest conduct." (ECF No. 1 ¶ 1.) He has sued Cable News Network, Inc. ("CNN"), Lev Parnas ("Parnas"), a Florida businessman, and Joseph A. Bondy ("Bondy"), a New York attorney, alleging defamation and false light invasion of privacy against all three Defendants.[2]

---

[1] *See Nunes v. WP Co. LLC*, No. 20-cv-1403 (D.D.C.) (motion to dismiss granted); *Nunes v. CNN, Inc.*, No. 20-CV-3976 (S.D.N.Y.) (motion to dismiss pending).

[2] One of Harvey's lawyers in this case has also represented Congressman Nunes in his various lawsuits. This action closely parrots the allegations made by Congressman Nunes in those lawsuits. *See Nunes v. WP Co. LLC*, No. 20-cv-1405 (E.D. Va.) (response to complaint forthcoming); *Nunes v. WP Co. LLC*, No. 20-cv-1403 (D.D.C.) (motion to dismiss granted); *Nunes v. CNN, Inc.*, No. 20-CV-3976 (S.D.N.Y.) (motion to dismiss pending); *Nunes v. Fusion GPS*, No. 19-cv-1148 (E.D. Va.) (motion to dismiss pending); *Nunes v. Lizza*, No. 19-cv-4064 (W.D. Iowa) (motion to dismiss granted).

Presently pending are the Motions of CNN, Parnas, and Bondy to Dismiss this action. (ECF Nos. 18, 19, and 23.)  With respect to the individual Defendants Parnas and Bondy, this Court lacks personal jurisdiction over these non-resident defendants.  The exercise of jurisdiction over both of them is not authorized under Maryland's "long-arm" statute.  Furthermore, even if they fell within the ambit of this statute, the exercise of personal jurisdiction would not comport with the due process requirements of the Fourteenth Amendment to the U.S. Constitution.  With respect to the Defendant CNN, the Complaint fails to plausibly plead the threshold requirements of defamation, and accordingly, by extension, also fails to plausibly plead the requirements of a false light claim.

In the fall of 2019, CNN began reporting on the first impeachment of President Donald J. Trump.  As a part of its news coverage, CNN repeated statements made by the lawyer Bondy on behalf of his client Parnas.  Bondy reported to CNN that Parnas would testify before Congress, as a part of the first impeachment proceedings against President Trump, that Congressman Devin Nunes had met with a former Ukrainian prosecutor to discuss former Vice President and now President Joseph R. Biden, Jr.  In December 2019, Nunes brought a lawsuit in which he asserts that CNN's coverage related to Bondy's statements was defamatory, alleging claims for defamation and conspiracy against the network. *See Nunes v. Cable News Network, Inc.*, No. REP-19-889, 2020 WL 2616704, at *6 (E.D. Va. May 22, 2020).  His case was transferred to the United States District Court of the Southern District of New York where it remains pending.  *See Nunes v. Cable News Network, Inc.*, No. 20-CV-3976.

The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Defendants' Motions (ECF Nos. 18, 19, and 23) are GRANTED. Specifically, the Plaintiff's Complaint is DISMISSED pursuant to 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction as to the individual Defendants Parnas and Bondy. This dismissal for lack of personal jurisdiction is not on the merits and is WITHOUT PREJUDICE to the Plaintiff Harvey seeking relief in other forums. Furthermore, the Plaintiff's Complaint is DISMISSED pursuant to Fed. R. Civ. Proc. 12(b)(6) with respect to the Defendant CNN for failure to state a claim upon which relief can be granted. This dismissal is WITHOUT PREJUDICE to the filing of an Amended Complaint within a specified time period.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff Harvey, a Maryland citizen, is a senior advisor to Congressman Devin G. Nunes ("Nunes"), a member of the House Permanent Select Committee on Intelligence. (ECF No. 1 ¶ 1.) In this case, Harvey alleges that all three Defendants falsely accused him of participating in an effort to aid and abet the commission of criminal, unethical, and dishonest conduct. (*Id.*) His claims stem from statements made by Defendant Parnas and Defendant Bondy, Parnas' attorney, published by Defendant CNN and other news outlets in their coverage of the 2019 impeachment trial of former President Trump and related allegations of wrongdoing by Trump and other individuals such as Parnas and

Congressman Nunes.  Nunes himself has filed several libel suits in four different federal courts, both for statements made related to the impeachment as well as other matters.

Early in the investigation of President Trump, it was widely reported that a key point of focus in the impeachment investigation was the effort of his personal attorney, Rudy Giuliani, to press the Ukrainian government to investigate former Vice President Biden, ultimately Mr. Trump's opponent in the 2020 U.S. Presidential Election.  It was also widely reported that Giuliani had been working with Defendant Parnas, a businessman and citizen of Florida, and Igor Fruman on these efforts.  (*See* ECF No. 1 ¶ 19 (citing *Two business associates of Trump's personal attorney Giuliani have been arrested on campaign finance charges*[3]).)  In October of 2019, Parnas was indicted by a federal grand jury sitting in the United States District Court for the Southern District of New York and was accused of funneling foreign money to U.S. politicians while trying to influence U.S.-Ukraine relations.  (*Id.* ¶ 19.)  Parnas hired Defendant Bondy, a New York-based criminal defense attorney to represent him in that criminal case. (*Id.* ¶ 9; Bondy Decl., ECF No. 19-2 ¶ 3; Notice of Appearance, *U.S. v. Parnas*, No. 19-cr-725 (S.D.N.Y. Oct. 22, 2019)).  Soon after his indictment, Parnas also received a Congressional subpoena to provide documents and testimony as a part of the impeachment investigation. (*See* ECF No. 1 ¶ 19 (citing Barrett et al., *supra* note 1).)

On November 22, 2019, Defendant CNN, a Delaware corporation headquartered in Georgia, published an online report, *Exclusive: Giuliani associate willing to tell Congress Nunes met*

---

[3] Devlin Barrett, John Wagner, and Rosalind S. Helderman, *Two business associates of Trump's personal attorney Giuliani have been arrested on campaign finance charges*, Wash. Post (Oct. 10, 2019), https://www.washingtonpost.com/politics/two-business-associates-of-trumps-personal-lawyergiuliani-have-been-arrested-and-are-in-custody/2019/10/10/9f9c101a-eb63-11e9-9306- 47cb0324fd44_story.html.

*with ex-Ukrainian official to get dirt on Biden.*[4]   (ECF No. 1 ¶ 31; Ex. A, ECF No. 23-2.)  The report was authored by senior reporter Vicky Ward and reported that Bondy told CNN that Parnas was "willing to comply with a Congressional subpoena for documents and testimony as a part of the impeachment inquiry in a manner that would allow him to protect his Fifth Amendment rights against self-incrimination." (ECF No. 23-2.)  It was reported that Bondy further stated that Parnas was prepared to testify that Nunes met "with a former Ukrainian prosecutor to discuss digging up dirt on Joe Biden" and that "Mr. Parnas learned from former Ukrainian Prosecutor General Victor Shokin that Nunes had met with Shokin in Vienna" in December 2018.  (*Id.*)

The CNN article cited government travel records reporting that Nunes had traveled to Europe with several aides from November 30 to December 3, 2018, when he was said to be meeting with Mr. Shokin.  (*Id.*)  CNN reported that "Nunes' entourage included retired colonel Derek Harvey." (Ex. A, ECF No. 23-2.)  The article also linked to a *Daily Beast* article, *Lev Parnas Helped Rep. Devin Nunes' Investigations*,[5] which reported that Parnas had "helped arrange meetings and calls in Europe for Rep. Devin Nunes in 2018," and explained that Congressman Eric Swalwell had discussed the same *Daily Beast* story in the impeachment hearing on November 21, 2019.  (*Id.*)  The article further discussed meetings held at the Trump International Hotel "that concerned Ukraine" involving Giuliani, Parnas, conservative

---

[4] Vicky Ward, *Exclusive: Giuliani associate willing to tell Congress Nunes met with ex-Ukrainian official to get dirt on Biden*, CNN (last updated Nov. 23, 2019), https://www.cnn.com/2019/11/22/politics/nunes-vienna-trip-ukrainian-prosecutor-biden/index.html.  A copy of the article is attached to Defendant CNN's Motion to Dismiss as Exhibit A.  (*See* ECF No. 23-2.)
[5] Betsy Swan, *Lev Parnas Helped Rep. Devin Nunes' Investigations*, Daily Beast (Nov. 20, 2019), https://www.thedailybeast.com/lev-parnas-helped-rep-devin-nunes-investigations.

journalist John Solomon and others—and at which "Harvey would occasionally be present" as "Nunes' proxy." (*Id.*)

Following publication, Ward appeared on CNN's evening television program "Cuomo Prime Time," where she and anchor Chris Cuomo discussed the story. (ECF No. 1 ¶ 33.) Ward again reported that Parnas had been subpoenaed in the impeachment inquiry, and that Bondy was hoping to negotiate terms that would allow Parnas to testify freely. (Exs. B & C, ECF Nos. 23-3, 23-4.) Ward described CNN's efforts to seek comment from Nunes, which were unsuccessful. (*Id.*)

In January 2020, Democrats on the House Intelligence Committee publicly released documents that Parnas had produced pursuant to his Congressional subpoena. They included a twenty-page collection of WhatsApp instant messages between Parnas and Harvey, which were posted on the House website on January 17, 2020. (ECF No. 1 ¶ 15.) The messages included communications in which Harvey and Parnas coordinated interviews with current and former Ukrainian prosecutors as well as meetings at the Trump International Hotel. (*Id.* ¶¶ 15-16; Ex. D, ECF No. 23-5.) Following the release of these messages, CNN published a second report, *New impeachment documents show more texts about possible surveillance of former US ambassador to Ukraine*,[6] which Harvey quotes in his Complaint. (ECF No. 1 ¶ 2, Statement 16; Ex. E, ECF No. 23-6.) In this second article co-authored by CNN journalists Jeremy Herb and Manu Raju, CNN reported on the messages between Harvey and Parnas, attaching a link to the source document where readers could review the correspondence. (ECF No. 23-6.)

---

[6] Jeremy Herb & Manu Raju, *New impeachment documents show more texts about possible surveillance of former US ambassador to Ukraine*, CNN (Jan. 18, 2020), https://www.cnn.com/2020/01/17/politics/lev-parnas-documents-january-17/index.html). A copy of the article is attached to Defendant CNN's Motion to Dismiss as Exhibit E. (See ECF No. 23-6.)

The article summarized the communications and stated that Harvey and Parnas had "arrange[d] interviews with Ukrainian officials and apparent meetings at the Trump International Hotel in Washington, D.C., including with Giuliani." (*Id.*)  The article concluded that the Parnas materials drew Nunes "further into the efforts undertaken by Giuliani and his associates to . . . dig up dirt on the President's political rivals." (*Id.*)  The article also noted that Nunes' spokesman had declined to comment.  (*Id.*)

On January 18, 2020, the same day the article was published, Raju posted three tweets about the online report, two of which were quoted in Harvey's Complaint.  (ECF No. 1 ¶ 2, Statement 16.)  One tweet stated, "Here are the text exchanges between a top Nunes aide and Parnas discussing interviews the aide, Derek Harvey, was seeking with Ukraine officials," and provided a link to the House Intelligence Committee website where readers could review the text messages.  (Ex. F, ECF No. 23-7.)  Another tweet stated: "The new materials draw Nunes even further into the efforts undertaken by Giuliani and his associates to . . . dig up dirt on the President's political rivals," and linked to the full online report.  (*Id.*)

On October 21, 2020, Plaintiff Harvey filed this action against Parnas, Bondy, and CNN claiming that through the statements made by Bondy on behalf of Parnas and reported by CNN, the Defendants falsely accused him of participating in an effort to aid and abet the commission of criminal, unethical, and dishonest conduct.  (ECF No. 1 ¶ 1.)  He asserts that the false statements exposed him to public scorn, ridicule, and contempt.  (*Id.*)  His Complaint provides a list of twenty statements made by the Defendants which Harvey claims to be false and defamatory.  (*Id.* ¶ 2.)  His suit alleges defamation and false light invasion of privacy and seeks punitive damages, as well as an injunction that would prohibit the Defendants from

repeating the allegedly defamatory statements.  On January 8, 2021, each of the Defendants filed a motion to dismiss Harvey's claims against them (*see* ECF Nos. 18, 19, and 23.)

## STANDARD OF REVIEW

### I.  Motion to Dismiss Under 12(b)(2)

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Id.*  A court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, but it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda.  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, No. ELH–13–03702, 2015 WL 751344, *3 (D. Md. Feb. 20, 2015).  In the latter situation, a plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276.  When considering whether the plaintiff has made the requisite showing, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff."  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

### II. Motion to Dismiss Under 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint

if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016).  However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

308, 322 (2007)).  In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."  *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).  A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).  Considering such documents does not convert a motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## ANALYSIS

### I.      This Court lacks personal jurisdiction with respect to Defendants Parnas and Bondy.

As a general rule, a plaintiff's choice of venue is entitled to substantial weight.  *See Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (citations omitted).  "However, the plaintiff's chosen venue is not given such substantial weight when . . . the cause of action 'bears little or no relation to that forum.'"  *Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp.*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002); *see also Heyco, Inc. v. Heyman*, 636 F. Supp. 1545, 1551 (S.D.N.Y. 1986) (holding that plaintiff's choice of forum is given less weight when the operative facts have no material connection with the chosen forum).  Moreover, Rule 4(k)(l) of the Federal Rules of Civil Procedure provides that a federal district court may exercise personal jurisdiction over a defendant only if it is in accordance with the law of the state where the district court is located.  *Carefirst of Maryland, Inc v. CarefirstPregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  "[T]o assert personal

jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*

Maryland's long-arm statute authorizes "personal jurisdiction over a person, who directly or by an agent," inter alia, "[t]ransacts any business or performs any character of work or service in the State," Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1); "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State," *id.* § 6-103(b)(4); or most relevant here, "[c]auses tortious injury in the State by an act or omission in the State," *id.* § 6-103(b)(3).  It is well-established under Maryland law that the "act" which gives rise to a cause of action in the context of defamation occurs where the defamation originated—not where any such statement happened to be read.  *See Zinz v. Evans & Mitchell Indus.*, 324 A.2d 140, 144 (Md. Ct. Spec. App. 1974) (allegedly defamatory letter mailed from Georgia to Maryland did not subject the defendant to jurisdiction under Maryland's long-arm statute); *Winter v. Pinkins*, No. JKB-14-2125, 2014 WL 5500393, at *3 (D. Md. Oct. 29, 2014) ("[h]armful speech occurs in the state where the speech originates" for purposes of Maryland's long-arm statute)).  As none of the statements made by Defendants Parnas and Bondy at issue in this case are alleged to have occurred in Maryland, exercising jurisdiction over Parnas and Bondy this case would be inconsistent with Maryland's long-arm statute.

Furthermore, even if there were statutory authority for this Court to exercise jurisdiction over these individual Defendants, doing so in this case would be inconsistent with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. The United States Supreme Court has long held that personal jurisdiction over a non-resident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Courts have separated the Supreme Court's standard into individual "prongs," first ascertaining whether the threshold of "minimum contacts" is met, and then considering whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable." *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). Generally, the court must consider the prong of constitutional reasonableness "[i]f, and only if the minimum contacts test is met." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2005). The "minimum contacts" test is met where the defendant has "purposefully avail[ed] himself of the privilege of conducting business under the laws of the forum state." *Id.* A determination that the defendant has established minimum contacts with the forum state amounts to a conclusion that "'it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Under due process jurisprudence and the minimum contacts analysis, the amount and nature of a litigant's contacts may provide a court with two different types of personal jurisdiction: "general and specific." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d

285, 292 n. 15 (4th Cir. 2009).  The United States Court of Appeals for the Fourth Circuit has

explained:

> General personal jurisdiction, on the one hand, requires 'continuous and systematic' contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

*Id.* (citing, *inter alia*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984))

(internal citations omitted).  In other words, "the threshold level of minimum contacts

sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."

*ALS Scan*, 293 F.3d at 715 (internal quotation marks omitted); *accord Saudi v. Northrop Grumman

Corp.*, 427 F.3d 271, 276 (4th Cir. 2005).

Harvey does not and cannot assert that this Court has general jurisdiction over either

Defendant Parnas or Defendant Bondy.  Neither Parnas nor Bondy is a resident of Maryland.

Parnas is a resident of Florida.  (ECF No.1 ¶ 8.)  Parnas asserts that he did not know that

Harvey lived in Maryland and that he never interacted with him in Maryland.  (Parnas

Declaration ¶¶ 4, 7, ECF No. 18-2.)  Bondy is a resident of New York.  (ECF No. 1 ¶ 9.)

Bondy is a member of the Bar of the State of New York and is not a member of the Bar of

the State of Maryland nor of this Court.  (Bondy Declaration ¶¶ 5-7, 16, ECF No. 19-2.)

Bondy did not travel to Maryland, use Maryland sources, or make any phone calls to Maryland

in connection with the statements at issue in this case.  (*Id.* ¶¶ 17-20.)  The only alleged

connection between these Defendants and the State of Maryland is simply that Harvey is a

Maryland resident and claims to have suffered harm in his home state.  Such facts are

insufficient to establish the kind of continuous or systematic contacts with the state of Maryland required for general jurisdiction.

Such facts are also insufficient to establish specific jurisdiction. Under the over-arching test established in the Fourth Circuit to determine whether specific jurisdiction over a defendant may be exercised, the Court must consider: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 397 (quoting *ALS Scan*, 293 F.3d at 711-12). In *ALS Scan*, the Fourth Circuit restated the test in the specific context of "electronic activity," holding that: "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714.

Soon after its decision in *ALS Scan*, the Fourth Circuit had the opportunity to again consider the court's authority to exercise personal jurisdiction over an out-of-state person who places information on the internet in the context of an action for libel. In *Young v. New Haven Advocate*, a warden of a prison in Virginia brought suit against two Connecticut-based newspapers after each published articles regarding the conditions at prison where he was employed and housed prisoners from Connecticut. 315 F.3d 256, 259 (4th Cir. 2002). The newspapers were printed and distributed in Connecticut, and although one of the papers had eight mail subscribers in Virginia, neither paper solicited subscriptions from Virginia residents.

*Id.* at 259-60.  No journalists for either paper traveled to Virginia to work on the articles, though two of the reporters did engage in phone calls to Virginia residents during the reporting process.  *Id.* at 260.

The Fourth Circuit held that under such circumstances the district court in Virginia lacked specific jurisdiction over the Connecticut newspapers, relying heavily on the U.S. Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).  In *Calder*, a California actress brought suit in California against, among others, a reporter and an editor, both citizens of Florida, who wrote and edited in Florida a magazine article claiming that the actress had a problem with alcohol.  *Calder*, 465 U.S. at 785.  The Supreme Court held that California had jurisdiction over the Florida residents because "California [was] the focal point both of the story and of the harm suffered."  *Id.* at 789.  The Court continued, providing that the reporters' "actions were expressly aimed at California" and "they knew that the brunt of [the potentially devastating] injury would be felt by [the actress] in the State in which she lives and works and in which the [magazine] has its largest circulation."  *Id.* at 789-90.  The same day the Supreme Court issued its decision in *Calder*, the Court also issued its decision in *Keeton v. Hustler Magazine*, in which the Court held that New Hampshire courts could exercise personal jurisdiction over a California publisher in a libel case brought by a New York plaintiff where the publisher sold "some 10 to 15,000 magazine copies" in New Hampshire each month.  465 U.S. 770, 772 (1984).  The Court found that the magazine "continuously and deliberately exploited the New Hampshire market" and, therefore, could have "reasonably anticipate[d] being haled into court there in a libel action based on the contents of the magazine."  *Id.* at 781.

The case at hand, like *Young*, is distinguishable from *Calder* and *Keeton*. In this case, there are no allegations that Parnas or Bondy directed electronic activity to Maryland. Although their statements may have been accessible online to Maryland residents, the individual Defendants did not "expressly aim" their statements to the state, nor "continuously and deliberately exploit" Maryland as some forum or market for their speech. Under Supreme Court and Fourth Circuit precedent, Harvey must show that the Defendants had the "manifest intent to aim" their speech at a Maryland audience. *See Young*, 315 F.3d 256, 258-59; *see also ALS Scan*, 293 F.3d at 714. There are no allegations in Harvey's Complaint, Declarations of Parnas, or Declarations of Bondy which could justify the conclusion that either Defendant sought to target the citizens of Maryland with their statements with respect to President Trump's impeachment and related allegations of wrongdoing.

In sum, Maryland's long-arm statute does not reach Parnas nor Bondy, and even if there was a statutory basis for jurisdiction, exercising such jurisdiction in this case would violate due process. As Judge Gibney explained to the Plaintiff's counsel in *Phillips v. Uber Technologies, Inc.*, No. JAG-15-544, 2016 WL 165024, at *3 (E.D. Va. Jan. 13, 2016), and as Judge Payne reminded the Plaintiff's counsel in *Nunes v. Cable News Network, Inc.*, No. REP-19-889, 2020 WL 2616704, at *6 (E.D. Va. May 22, 2020), "the 'Court cannot stand as a willing repository for cases which have no real nexus to [the] district.'" For these reasons, Defendant Parnas' Motion to Dismiss (ECF No. 18) and Defendant Bondy's Motion to Dismiss (ECF No. 19) are each GRANTED pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The Plaintiff's Complaint with respect to each of these Defendants is

DISMISSED.  This dismissal for lack of personal jurisdiction is not on the merits[7] and is WITHOUT PREJUDICE to the Plaintiff Harvey seeking relief in other forums in which the Defendant Parnas and the Defendant Bondy are subject to personal jurisdiction.  *See* William W. Schwarzer, A. Wallace Tashima, & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 9:128.5 (citing Fed. R. Civ. Proc. 41(b)); *see also Southern Walk at Broadlands Homeowners Ass'n, Inc. v. Openband at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (holding that a dismissal for a defect in jurisdiction must be one without prejudice, "because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits"); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n.3 (2d Cir. 1994) (same); *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) (same).

## II.  Plaintiff fails to state a claim for defamation against Defendant CNN.

As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland law applies.  *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n. 3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  To state a claim for defamation under Maryland law, a plaintiff must sufficiently allege "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  *Rabinowitz v. Oates*, 955 F. Supp. 485, 488 (D. Md. 1996) (citing *De Leon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1236 (4th Cir. 1989)).  The first element of this cause of action

---

[7] Accordingly, this Court does not address the alternative arguments of the Defendants Parnas and Bondy with respect to privilege and lack of malice.

explicitly requires a plaintiff to allege not only that a particular statement is false—a plaintiff must also allege that the statement is of a defamatory nature. "'Under Maryland law, a defamatory statement is one that tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with that person.'" *See Murray v. United Food and Commercial Workers Intern. Union*, 389 F.3d 297, 305 (4th Cir. 2002) (citing *Samuels v. Tschechtelin*, 763 A.2d 209, 241-42 (Md. 2000) (internal citations omitted)).

It is unclear to this Court how Plaintiff Harvey can meet this threshold requirement with respect to any of the statements challenged in this case.  Harvey was a Senior Advisor to Congressman Nunes, who, as Harvey pleads, was the "leader of the Republican opposition" to the first impeachment of former President Trump.  (ECF No. 1 ¶ 45(e).)  As the House Republicans stated in the executive summary of the official House impeachment report, they believed there was "nothing wrong with asking serious questions" about the Bidens and their dealings in Ukraine.[8]  *See* H.R. Comm. on the Judiciary, *Impeachment of Donald J. Trump, President of the United States*, Doc. No. 116-346, at 3-4 (2019), available at https://congress.gov/116/crpt/hrpt346/CRPT-116hrpt346.pdf.  Given this public record, Harvey's arguments that it was defamatory for CNN to state or otherwise imply that he was assisting Nunes in investigation of a political rival are simply without merit.  Nevertheless, this Court details below how these statements fail to state a claim for defamation for numerous additional reasons.

---

[8] On a motion to dismiss, a court may take judicial notice of matters of public record.  *See Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (4th Cir. 2019) (citing *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

**A. Claims based on statements not published by Defendant CNN must be dismissed.**

Another threshold requirement for a claim for defamation is "publication." *Meija v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495, 499 (D. Md. 2020). Publication requires that "the *defendant* made a defamatory statement to a third person." *Id.* (emphasis added). In other words, the plaintiff "must . . . establish that the defendant made the allegedly defamatory statement in issue." Robert D. Sack, *Sack on Defamation* § 2:5.1 (5th ed. 2017); *see also Ali v. Giant Food LLC/Stop & Shop Supermarket Co.*, 595 F. Supp. 2d 618, 623 n. 2 (D. Md. 2009). In this case, Harvey expressly provides the source of each of the twenty statements he alleges are defamatory. (*See* ECF No. 1 ¶ 2.) The Complaint does not allege that Statements 7-8, 10-12, 14, and 17-20 were published by Defendant CNN. (*Id.*) As publication is a threshold requirement for defamation, Harvey's claims for defamation on the basis of these ten statements must be dismissed.

Further, although Harvey lists CNN as one source of Statements 9 and 13, CNN asserts that such statements were not in fact made by the network or any of its reporters. (ECF No. 23-1 at 16.) CNN provides citations for two publications from other media organizations which contained these challenged statements.[9] As provided above, this Court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citing *Trimble Nav.*, 484 F.3d at 705). A

---

[9] *Id.* (citing Tr. of Rachel Maddow Interview with Lev Parnas, MSNBC (Jan. 5, 2020), https://www.msnbc.com/transcripts/rachel-maddow-show/2020-01-15-msna1322756; Rosalind S. Helderman & Colby Itkowitz, *Top House Democrat says ethics probe of Nunes is likely over alleged meeting with Ukrainian about Bidens*, Wash. Post (Nov. 23, 2019), https://www.washingtonpost.com/politics/top-house-democrat-says-ethics-probe-of-nunes-is-likely-over-alleged-meeting-with-ukrainian-about-bidens/2019/11/23/0dde6b22-0e0a-11ea-97ac-a7ccc8dd1ebc_story.html).

review of these documents indicate that CNN was not the source of Statements 9 and 13, and to the extent Harvey's claims are based on these two statements, these two claims must be dismissed as well. Nevertheless, even if they were ever published by CNN, Harvey fails to state a claim for relief on the basis of Statements 9 and 13 for the same reasons provided with respect to the other statements below.

**B. With respect to the remaining eight statements, Plaintiff cannot state a plausible claim for relief.**

Harvey's allegations with respect to the remaining eight statements fail to state a claim for relief. This Court takes each statement in turn.

### i.   Statement 1

The first statement challenged by Harvey is provided in his Complaint as follows:

> Nunes had "meetings . . . in Vienna last year with a former Ukrainian prosecutor to discuss digging up dirt on Joe Biden . . . Parnas was told directly by the former Ukrainian official that he met last year in Vienna with Rep. Nunes . . . Nunes and three aides traveled to Europe from November 30 to December 3, 2018 . . . Nunes' entourage included retired colonel Dereck Harvey.

(ECF No. 1 ¶ 2, Statement No. 1.) First, it should be noted that although Harvey's Complaint groups these phrases into a single paragraph, this is not how they appeared in the article from which they were taken. Statement 1 comes from the 2019 article authored by Ward.[10] The first two phrases of the statement come from the top of the article, while the final two phrases come more than twenty paragraphs later at the end of the piece. (*See* ECF No. 23-2.) This is significant because only the later phrases actually reference the Plaintiff. As provided above,

---

[10] Vicky Ward, *Exclusive: Giuliani associate willing to tell Congress Nunes met with ex-Ukrainian official to get dirt on Biden*, CNN (last updated Nov. 23, 2019), https://www.cnn.com/2019/11/22/politics/nunes-vienna-trip-ukrainian-prosecutor-biden/index.html. (ECF No. 23-2.)

to state a claim for defamation, a plaintiff must sufficiently allege "a false and defamatory statement *concerning another*." *Rabinowitz*, 955 F. Supp. at 488 (citing *De Leon*, 871 F.2d at 1236) (emphasis added).  In other words, "in order to maintain an action for libel or slander, it must appear that the defamatory words refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Great Atl. & Pac. Tea Co. v. Paul*, 261 A.2d 731, 736 (Md. 1970) (citation omitted).  It is unclear to this Court how the sentences at the beginning of the article which only reference Nunes and Parnas could be "concerning" the Plaintiff.  Such phrases cannot provide the Plaintiff with a claim for defamation.

Moreover, the phrases contained within Statement 1 which do actually reference the Plaintiff are not actionable, as Harvey cannot show that they are materially false.  To prevail on a claim for defamation, a plaintiff must plead and prove "the falsity of a particular statement." *See Spengler v. Sears, Roebuck & Co.*, 878 A.2d 628, 640 (Md. Ct. Spec. App. 2005).  However, falsity does not require absolute precision: "[f]or the purpose of a defamation claim, a statement is only false if it is 'not substantially correct.'" *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 431 (D. Md. 2005).   "Minor inaccuracies do not amount to falsity provided that the substance or gist is justified."  *Id.*   Given that Harvey specifically pleads in his Complaint that he was a part of a delegation which traveled to Libya and Malta with Nunes, he simply cannot show that the final two phrases of Statement 1 which provide that he traveled to Europe with Nunes are false.  (ECF No. ¶ 14(a).)

Finally, to any extent the Plaintiff is seeking to argue that Statement 1 as a whole implies that Harvey personally attended a meeting with Shokin, he still fails to state a claim for relief.  A plaintiff may base a claim for defamation on what is allegedly implied rather than specifically

stated.  *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993).  However, "because the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true."  *Id.* at 1092-93 (citations omitted).  "The language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference."  *Id.* at 1093 (citing *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)).  Given the distance between the phrases in Statement 1 which report Nunes met with Shokin and that the first mention of Harvey is not until several paragraphs later, Harvey cannot meet this rigorous standard and suggest that CNN meant to imply Harvey also attended that specific alleged meeting.

Further, even if it was plausible that CNN meant to imply Harvey attended the meeting with Shokin, the statement would still fail to provide a claim for defamation for two further reasons.  First, the implication is not materially false.  The WhatsApp instant messages between the Plaintiff and Defendant Parnas—documents incorporated by reference in his Complaint—include correspondence regarding scheduling interviews with multiple former Ukrainian prosecutors, specifically including Shokin.  (*See* ECF No. 1 ¶¶ 15-16; Ex. D, ECF No. 23-5.)

Second, the implication is not "defamatory."  As provided above, to be actionable, a statement must be "defamatory to such an extent as to expose [the plaintiff] to 'public scorn, hatred, contempt, or ridicule, thereby discouraging others in community from having a good opinion of, or associating with or dealing with [him].'"  *Mates v. N. Am. Vaccine, Inc.*, 53 F. Supp. 2d 814, 830 (quoting *Batson v. Shiflett*, 602 A.2d 1191, 1210 (Md. 1992)); *see also Murray*,

389 F.3d at 305 (citing *Samuels*, 763 A.2d at 241-42 (internal citations omitted)).  Additionally,

the "falsity of a statement and the defamatory 'sting' of the publication must coincide."  *Chapin*,

993 F.2d at 1092.  Accordingly, "where the alleged defamatory 'sting' arises from substantially

true facts, the plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for

libel."  *Id.*  In this case, any "sting" from this implication would be from the substantially true

fact that Harvey did set meetings with Ukrainian prosecutors including Shokin, and the

Plaintiff cannot rely on the minor or irrelevant alleged inaccuracy that he did not actually attend

a meeting with Shokin.  Further, Harvey does not even attempt to articulate *why* connecting

him to Nunes' investigations related to Biden would expose him to public scorn (nor does this

Court believe that he can given the public record with respect to House Republicans and these

investigation efforts).  For all of these reasons, Harvey cannot base a claim for defamation on

Statement 1 as a matter of law.

   ii.   **Statement 2**

   The second allegedly defamatory statement included in Harvey's Complaint reads as

follows:

> Nunes planned the trip to Vienna after Republicans lost control of the House
> in the mid-term elections . . . Mr. Parnas learned through Nunes' investigator,
> Derek Harvey, that the Congressman had sequenced this trip to occur after the
> mid-term elections yet before Congress' return to session, so that Nunes would
> not have to disclose the trip details to his Democrat colleagues in Congress . . .
> [S]hortly after the Vienna trip, he and Harvey met at the Trump International
> Hotel in Washington, where they discussed claims about the Bidens.

(ECF No. 1 ¶ 2, Statement No. 2.)  Similar to Statement 1, this statement is a combination of different sentences within Ward's 2019 article,[11] and again some of the distinct phrases within the statement in no way "concern" the Plaintiff.  The first reference to the Plaintiff explains that Parnas "learned through Nunes' investigator" information concerning Nunes.  If such statement is defamatory of any individual, it would be of Nunes, not the *source* of the information.  *See Burrascano v. Levi*, 452 F. Supp. 1066, 1072 (D. Md. 1978) (holding that accusing someone of being an "informant" is not libelous), *aff'd sub nom. Burrascano v. U.S. Attorney Gen.*, 612 F.2d 1306 (4th Cir. 1979).

Further, even if the statement can fairly be considered to concern the Plaintiff, it again is unclear how such a statement could be characterized as defamatory.  As the statement indicates, Nunes was operating within the confines of Congressional disclosure requirements.  An accusation that Nunes was lawfully seeking to hide information from political adversaries is not only seemingly true but does not rise to the level of defamatory speech.  As a court has already instructed the Plaintiff's counsel in his representation of Nunes, "[s]tatements to the effect plaintiffs have a secret is not itself defamatory, even a politically explosive one."  *Nunes v. Lizza*, No. 20-cv-4003-CJW-MAR, 2020 WL 5504005, at *6 (N.D. Iowa Sept. 11, 2020).

The sentences within Statement 2 which can be construed as concerning the Plaintiff also fail to state a claim, as they are not materially false.  Harvey does not deny meeting with Parnas.  As he states in his Complaint, he and Parnas communicated "about the House Intelligence Committee's investigation into Ukrainian interference in American politics."

---

[11] Vicky Ward, *Exclusive: Giuliani associate willing to tell Congress Nunes met with ex-Ukrainian official to get dirt on Biden*, CNN (last updated Nov. 23, 2019), https://www.cnn.com/2019/11/22/politics/nunes-vienna-trip-ukrainian-prosecutor-biden/index.html.  (*See* ECF No. 23-2.)

(ECF No. 1 ¶ 15.)  Additionally, the instant messages incorporated by the Complaint include messages in which the two specifically coordinated meetings to be held at the Trump International Hotel.  (Ex. D, ECF No. 23-5.)  For all of these reasons, Statement 2 does not provide a basis for a claim for defamation.

### iii.    Statements 3 & 4

Statements 3 and 4 in the Plaintiff's Complaint are excerpts from the dialogue between Ward and Cuomo on Cuomo's primetime television show, which aired after the release of Ward's 2019 article.  (ECF No. 1 ¶ 2; Exs. B & C, ECF Nos. 23-3, 23-4.)  Statement 3 is provided as follows:

> We understand from Mr. Lev Parnas' lawyer [Bondy] . . . that . . . last December, Devin Nunes, the senior Republican, presiding over the impeachment hearings, went to Vienna, and met with Victor Shokin . . . So, Shokin tells Lev Parnas . . . And what's interesting is that Nunes comes back and tries to recruit Lev Parnas. He does recruit Lev Parnas to merge his effort, his and Rudy Giuliani's investigations, with his.  He has an aide [Plaintiff] meet with Lev Parnas, and they discuss how to reach out to . . . various Ukraine prosecutors, who might have information on the Bidens.

(ECF No. 1 ¶ 2, Statement No. 3.)  Statement 4 continues:

> The prosecutor who was the one at the center of all the controversy . . . met with Nunes in Vienna last December.  Shokin then tells Parnas, the shady guy, at the center of all this . . . And then Nunes' staffer [Plaintiff] meets with Parnas . . . Well so does Nunes.  Nunes meets with Parnas.  Nunes speaks to Parnas several [times] . . . [a]bout dirt on the Bidens . . . [T]hey're asked to merge operations, essentially.  So, in other words, you know, this whole impeachment, Chris, is about a shadow foreign policy . . . That Devin Nunes appears to have . . . some involvement in . . . So, he knew it was going on.

(*Id.*, Statement No. 4.)

Both of these statements are not actionable for many of the same reasons as Statements 1 and 2.  First, both statements again do not concern Harvey.  The only sentence in Statement

3 which refers to Harvey states that Nunes had him meet with Parnas, and that he and Parnas discussed communications with Ukraine prosecutors. (*Id.*, Statement No. 3.) Similarly, the only sentence in Statement 4 which appears to reference Harvey states again that Nunes' "staffer" met with Parnas. (*Id.*, Statement No. 4.) As explained above, such statements are not materially false. Additionally, to any extent Harvey is challenging the portion of the dialogue which provides that Nunes and Parnas sought to "merge operations," the statements still fail to provide a claim for defamation. There is no material falsity. Given the numerous text messages exchanged by Parnas and Harvey, it is difficult to dispute the fact that they were working together (*see* Ex. D, ECF No. 23-5), and any "sting" of CNN's reporting on this topic comes from substantially true statements. For these reasons, Statements 3 and 4 are not defamatory.

### iv.    Statements 5 & 6

Statements 5 and 6 also derive from Cuomo's primetime television show. Harvey's claims on the basis of these Statements can be dismissed for much of the same reasons as Statement 2, as each in part has to do with Nunes' timing of his travels to Europe in order to avoid having to disclose his activities to Congress. Statement 5 is provided as follows:

> Well, what's so intriguing, for want of a better word, about his whole trip was the timing of it. And, in fact, his aide, Derek Harvey told Lev Parnas that the timing of it was very deliberate. It was done right after the Republicans lost the House in the midterms, but before the Democrats took over in January. Why. Because once the Democrats took over, he would have had to . . . disclose the details of it. So, this is why nobody has known, until now, what Devin Nunes was doing last December.

(ECF No. 1 ¶ 2, Statement No. 5.) The first half of Statement 6 similarly states:

> [T]he only thing that's reported in the Congressional record is that he, and Derek Harvey, and two other aides went to Europe. But they don't say who

> they met with?  No.  And this was quite deliberate, according to my reporting, according to the lawyer speaking for Parnas [Bondy], Derek Harvey, the aide, told Parnas that the timing was done deliberately to keep it undercover . . .

(*Id.*, Statement No. 6.)  As these statements are not materially false, nor defamatory, nor truly concerning the Plaintiff (he was only the source of the information), they cannot support his claim for defamation.

> Statement 6's second half is of a different nature.  The statement continues:

> All right, we are going to pick this up with a Democrat, . . . Katie Hill, still fighting back against what she calls a coordinated smear campaign to get her out.  But one smear campaign at a time!

(*Id.*)  Defendant CNN describes this portion of the statement as Cuomo's transition to the next guest appearing on his program, former Congressman Katie Hill.  (ECF No. 23-1 at 26.) In large part this statement has nothing to do with the Plaintiff, and therefore, cannot be defamatory of him.  Cuomo's final remark, "But one smear campaign at a time!" could plausibly be interpreted to refer back to the subject of Nunes and his activities, but it is again unclear how the statement specifically concerns the Plaintiff.

Moreover, even if it could be fairly characterized as concerning Harvey, Statement 6 is not actionable as defamation.  To be actionable, a statement must provably false—it cannot be an opinion.  *See Gibson v. Boy Scouts of Am.*, 163 F. App'x 206, 212 (4th Cir. 2006) (per curiam) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-20 (1990)).  Accordingly, where a defendant states "a subjective view, an interpretation, a theory, conjecture or surmise, rather than a claim to be in possession of objectively verifiable false fact, the statement is not actionable." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998) (alterations and citation omitted) (affirming dismissal of complaint).  Any accusation that Nunes and others

engaged in a "smear campaign" of anyone is a protected statement of opinion—not a provably false assertion of fact. *See Camassar v. Day Publ'g Co.*, No. KNL-cv-1360193015, 2015 WL 6761619, at *4 (Conn. Super. Ct. Oct. 9, 2015) ("Courts have held that stronger language than 'shakedown' and 'smear campaign' were not defamatory."); *see also Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (holding that accusing plaintiff of "blackmail" was not defamatory). The latter half of Statement 6 is not actionable.

     **v.    Statements 15 & 16**

     The final two Statements attributable to CNN and challenged by Harvey come from the report and tweets which followed the House Intelligence Committee's release of documents produced by Parnas pursuant to his Congressional subpoena, including the twenty-page collection of WhatsApp instant messages between Parnas and Harvey. (ECF No. 1 ¶ 15; Exs. E and F, ECF Nos. 23-6, 23-7.) Statement 15 includes the text of two tweets which provide a link to the documents posted by the House and describe the significance of their content. (ECF No. 1 ¶ 2, Statement No. 15.) It states:

> Here are the text exchanges between a top Nunes aide and Parnas discussing interviews the aide, Derek Harvey, was seeking with Ukraine officials . . . The new materials draw Nunes even further into the efforts undertaken by Giuliani and his associates to . . . dig up dirt on the President's political rivals.

(*Id.*) Statement 16 is an excerpt of the corresponding online report,[12] which provides:

> The new documents also show communications between Parnas and Nunes' aide Derek Harvey, in which they arrange interviews with Ukrainian officials and apparent meetings at the Trump International Hotel in Washington, D.C. . . . The new materials draw Nunes, the top Republican on the House

---

[12] Jeremy Herb & Manu Raju, *New impeachment documents show more texts about possible surveillance of former US ambassador to Ukraine*, CNN (Jan. 18, 2020), https://www.cnn.com/2020/01/17/politics/lev-parnas-documents-january-17/index.html). (*See* ECF No. 23-7.)

Intelligence Committee, even further into the efforts undertaken by Giuliani
and his associates to . . . dig up dirt on the President's political rivals.

(*Id.*, Statement No. 16.)

Again, only portions of the challenged Statements actually reference Harvey.  The

sentences which do reference Harvey are indisputably true—Harvey incorporates the very

same instant messages into his own Complaint.  (ECF No. 1 ¶¶ 15-16.)  Moreover, the

conclusion that the messages "draw Nunes . . . further into" the work with Giuliani, even if it

could be fairly characterized as concerning the Plaintiff, is an unactionable opinion as "'no

reasonable reader would consider the [statement] anything but the opinion of the author drawn

from the circumstances related.'"  *Biospherics*, 151 F.3d at 185 (quoting *Chapin*, 993 F.2d at

1093).  The tweets and report provide a link to the actual messages between Harvey and

Parnas, ensuring that "the reader is free to draw his or her own conclusions" based upon the

facts.  *See Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1144-45 (D.C. Cir. 1994).  The CNN

reporters' interpretation of the messages between Harvey and Parnas, and their effect on

Nunes, is not actionable as defamation.

**C.  Plaintiff fails to state a claim for defamation for the additional reason that the
challenge statements are privileged**.

In order to prevail on a claim for defamation, a plaintiff must prove all four elements

of defamation, as well as that the statements are issue are not privileged.  *Marinkovic v. Vasquez*,

No. GLR-14-3069, 2015 WL 3767165, at *5 (D. Md. June 16, 2015).  Even if any the eight

statements made by Defendant CNN were concerning the Plaintiff, false, defamatory, or

statements of fact, Harvey fails to state a claim for defamation for the additional reason that

he cannot show any of the statements are issue are not privileged.

Statements 15 and 16 are protected from suit by the fair report privilege. Under Maryland law, the fair report privilege protects those who "report legal and official proceedings that are, in and of themselves defamatory, so long as the account is 'fair and substantially accurate.'" *Piscatelli v. Smith*, 35 A.3d 1140, 1149 (Md. 2012) (quoting *Chesapeake Publ'g Corp. v. Williams*, 661 A.2d 1169, 1174 (Md. 1995)). "The privilege arises from the public's interest in having access to information about official proceedings and public meetings." *Id.* (citing Restatement (Second) of Torts § 611 cmt. a (1977)).

The tweets and report at issue in Statements 15 and 16 indisputably summarize official documents from the first impeachment of President Trump, referencing "new documents" published by the House and a providing a link to the actual documents themselves. Applying Florida's own fair report privilege, the court in *Gubarev v. BuzzFeed, Inc.* held that where a CNN article included a hyperlink to documents related to an official action, and that hyperlink was conspicuous, the ordinary reader could understand that the article was a report on those official proceedings, and thus was protected by the privilege. 340 F. Supp. 3d 1304, 1318-19 (S.D. Fla. 2018). In this case, readers of the CNN article and its authors' tweets would surely understand the publications to be about the impeachment proceedings. Further, the description of the links' contents were fair and accurate: the linked documents plainly show correspondence between Derek and Harvey and reveal their discussions regarding interviews with Ukrainian officials. (*See* Ex. D, ECF No. 23-5.) Statements 15 and 16 were fair and accurate summaries of an official report. They are protected under the fair report privilege and cannot give rise to a defamation claim. *See Nanji*, 403 F. Supp. 2d at 434 (dismissing

defamation claims where allegedly defamatory statements were fair and accurate reports on official proceedings).

Statements 1 through 6 are also privileged. These statements come from CNN's reporting on Defendant Bondy's summary of what information his client, Defendant Parnas, was willing to provide in response to the House impeachment subpoena. In *Norman v. Borison*, the Maryland Court of Appeals stated that Maryland law recognizes an absolute privilege for statements made by an attorney of record in both judicial and quasi-judicial proceedings, as well as those made by an attorney of record extrinsic to judicial or quasi-judicial proceedings under certain circumstances. 17 A.3d 697, 708-11 (Md. 2011). Extrinsic statements are protected when such statements are: (1) "made with the direct purpose or effect of producing a judicial or quasi-judicial proceeding"; (2) "prepared for possible use in connection with a pending judicial proceeding"; or (3) "connected contextually to a pending or ongoing proceedings," although "not designed necessarily to produce a proceeding or cause one to be 'filed.'" *Id.* at 710-11 (internal citations omitted). "Connected contextually" means having "some rational, articulable relevance or responsiveness to [a] proceeding." *Id.* at 714.

Harvey's Complaint expressly alleges that in making statements on behalf of Parnas to CNN, Bondy was acting to advance his client's interests with respect to Parnas' own criminal indictment. (*See* ECF No. 1 ¶¶ 9, 21-22.) Although such statements were made outside the actual impeachment proceedings, such statements fall within the category of extrinsic statements protected under Maryland law. Following the its decision in *Norman*, the Maryland Court of Appeals noted in *Mixter v. Farmer* that "Maryland courts recognize an absolute privilege for attorneys to make potentially defamatory statements if the statements have some

rational relationship to the judicial proceedings." 81 A.3d 631, 634 (Md. 2013). Bondy's statements made on behalf of his client, Defendant Parnas, were rationally related to the impeachment proceedings and were absolutely privileged under Maryland law.

Maryland law extends absolute privilege to attorneys of record making these types of statements for the same reason underlying the fair report privilege: "to encourage the free divulgence of information in pursuit of justice." *Norman*, 17 A.3d at 711. The two privileges "operat[e] in tandem." *Rosenberg v. Helinski*, 616 A.2d 866, 872 (Md. 1992). The absolute privilege accorded to attorneys and other participants in judicial proceedings works alongside the qualified fair report privilege "given to persons who report to others defamatory statements uttered during the course of judicial proceedings." *Id.* CNN is protected from suit with respect to Statements 1 through 6, as each represents a "fair and accurate report" of Bondy's absolutely privileged statements. Harvey does not contend that CNN's reports on Bondy's statements were unfair or inaccurate. Instead he objects to the content of Parnas' proffered testimony. However, a report is "fair" when "'the overall impression created by the summary was no more defamatory than that created by the original.'" *Piscatelli*, 35 A.3d at 1150-51. Even if the statements made by Bondy on behalf of Parnas and reported by CNN were at all defamatory, CNN's accurate coverage of Bondy's statements was no more defamatory than Parnas' statements themselves. For all of these reasons, Harvey cannot show that the statements made by CNN were not privileged and, therefore, cannot state a claim for defamation under Maryland law.

**D. Plaintiff fails to state a claim for defamation for the additional reason that he cannot plausibly allege actual malice.**

The above analysis provides numerous reasons Plaintiff Harvey's Complaint fails to state a claim for defamation.  Even if any of the statements included in Harvey's Complaint were concerning Harvey, materially false, defamatory, or unprivileged, Harvey would still fail to state a claim for relief for the additional reason that he cannot plausibly allege actual malice. It is well-established that, for purposes of defamation claims, the First Amendment distinguishes between private figures, who are entitled to greater protection from reputational harm, from public figures.  Public figures include those "who hold governmental office" or "who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention," assume a place on the public stage and thereby "run[] the risk of closer public scrutiny" but also achieve "access to the channels of effective communication" to correct alleged falsehoods published about them.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342-44 (1974).  Accordingly, courts require public officials or public figures to plead, and ultimately prove, by clear and convincing evidence, that the defendant made the allegedly defamatory statement at issue with "actual malice*." New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

Actual malice means "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.*   This standard is subjective: it asks whether the speaker knowingly uttered a falsehood or "in fact entertained serious doubts as to the truth of his publication" and is measured by the state of mind of the "the persons . . . having responsibility for the publication." *Id.* at 287.  Since the Supreme Court's decisions in *Iqbal* and *Twombly*, the Fourth Circuit has made it clear that conclusory allegations are insufficient to adequately plead knowledge of falsity or reckless disregard for the truth. *See Mayfield v. Nat'l Ass'n for Stock Car*

*Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012).   Additionally, in *Nunes v. WP Company, LLC*, Nunes' claims for defamation against the *Washington Post* were dismissed where Nunes alleged actual malice with "nothing more than the naked assertion[s]" that the defendants knew the disputed statements were false and had some motive to disparage him.   2020 WL 7668900, at *4-*5.  The court held that Nunes' pleading, prepared by counsel now representing Harvey in this case, offered no more than "labels and conclusions" and "a reference to the relevant legal standard" and, therefore, did not satisfy Rule 8.   *Id.*   A plaintiff must plead enough facts to raise the existence of knowledge of falsity "above the speculative level." *Mayfield*, 674 F.3d at 377

In this case, Harvey and his counsel fair no better.  Harvey's Complaint is devoid of any factual allegations with respect to the state of mind of reporters who published the article and tweets which are the subject of Statements 15 and 16.  With respect to Statements 1 through 6, Harvey's Complaint does mention one of the statements' authors, Vicky Ward, by name, but it again fails to assert any facts plausibly alleging that she subjectively knew the information to be false, nor that she subjectively believed it to be probably false.

Harvey's Complaint instead suggests that CNN, as a company, should have been wary of information which allegedly originated with Defendant Parnas.  (ECF No. 1 ¶ 45(a)). Harvey alleges that Parnas was "indicted by the United States Government, charged with multiple Federal crimes," and, as such, "[t]here were obvious reasons to doubt the veracity and accuracy of any information Parnas provided."  (*Id.*)  He further asserts that CNN's reporters sought to minimalize concerns about Parnas' credibility and "deliberately ignored" materials which would have allegedly demonstrated the falsity of Parnas' statements, all in an

effort to support a preconceived and false story they wanted to report.  (*Id.* ¶ 45(c), (d).)  Yet, "[c]ourts have consistently held that reliance on tainted or troubled sources does not alone establish actual malice." *Talley v. Time, Inc.*, 923 F.3d 878, 903 (10th Cir. 2019) (quoting *Sack on Defamation*, § 5:5.2(C)).  Courts have also found that including the grounds for doubting a source may actually rebut a claim of malice.  *See e.g.*, *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1304 (D.C. Cir. 1996).  In this case, CNN specifically reported that Parnas was recently indicted on federal campaign finance charges and accurately characterized all of his statements, made through his lawyer Defendant Bondy, as mere "claims."  (*See* ECF No. 23-2.)  Finally, as the United State District Court for the Western District of Iowa instructed Nunes and his counsel in *Nunes v. Lizza*, "naked assertions" that the defendant "failed to observe journalistic standards, conceived a storyline in advance and sought to find evidence to confirm that story, and relied on unreliable or biased sources in researching" the challenged publications, fail to plausibly assert actual malice.  2020 WL 4507326, at *20.  The Complaint's conclusory allegations also fail to plausibly allege actual malice.

In his Response in Opposition to Defendant CNN's Motion to Dismiss, Plaintiff Harvey did not contest CNN's arguments with respect to his status as a public official.  (*See* ECF No. 27-1.)  However, in his Reponses to Defendants Parnas and Bondy, Harvey does argue he should not be considered a public official for purposes of defamation and, therefore that he is not required to plead actual malice.  (*See* ECF No. 28-1.)  In *Rosenblatt v. Baer*, the Supreme Court held that the "public official" designation applies "at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."  383 U.S.

75, 78 (1966).  As the Fourth Circuit has recently noted, "[t]he public official category is by no means limited to upper echelons of government.  All important government employees are subject to discussion by the people who employ them and by others who would comment on their behavior."  *Horne v. WTVR, LLC*, 893 F.3d 201, 207 (4th Cir. 2018) (quoting *Sack on Defamation* § 5:2.1)).

In *Horne*, the Fourth Circuit outlined distinct tests for public officials and public figures. As the Court explained, "[i]n determining whether a plaintiff had apparent substantial responsibility, courts examine whether 'the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees . . . .'"  *Id.* (citing *Rosenblatt*, 383 U.S. at 86.  In other words, "to find apparent authority, '[t]he employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutin[y] and discussion occasioned by the particular charges in controversy.'" *Id.* (citing *Rosenblatt*, 3383 U.S. at 86 n.13).  Having outlined these tests, the Fourth Circuit continued its analysis, stating: "Nevertheless, we find it helpful to review this Court's interpretations of the Supreme Court's guidance, and, because we have infrequently faced this issue, we supplement this understanding with the non-precedential decisions of other courts." *Id.*

In *Baumback v. American Broad. Cos., Inc.*, an unpublished Fourth Circuit case, the Court concluded that a plaintiff was a public official with apparent substantial responsibility for control over governmental affairs related to timber sales because his publicly available job description "created the appearance that [his] governmental responsibilities were significant,"

and because his "prominent rule in controlling timber sales . . . was frequently in the news . . . ." 161 F.3d 1, 1998 WL 536358, at *4 (4th Cir. 1998). Similarly in *Horne* itself, the Fourth Circuit held that an employee of the county school board office was a "public official" within the meaning of Supreme Court precedent in light of her apparent substantial responsibility with respect to the school's system's finances in her brief four months on the job. 893 F.3d at 208-09. The plaintiff's job description included "manag[ing] the financial, budgetary, and purchasing affairs of the School Division in a prudent and effective manner," suggesting she exercised discretion in her role and such discretion could invite public discussion and scrutiny." *Id.* The plaintiff argued that she lacked actual and apparent substantial responsibility and control over governmental affairs because she did not make decisions about how to spend funds—she asserted that she merely completed administrative functions in carrying out the budget created by the superintendent and the school board. *Id.* at 209. The Fourth Circuit found her argument unavailing, stating "[i]t is unnecessary for each task that [the plaintiff] must complete to invite public scrutiny, and it is sufficient under [the facts alleged] that the position itself invites scrutiny," regardless of the fact that she did not perform all tasks as listed in the job description. *Id.*

Looking beyond the Fourth Circuit, courts have held a wide range of government employees qualify as public officials for purposes of the application of actual malice. *See Mangual v. Rotger-Sabat*, 317 F.3d 45, 65 (1st Cir. 2003) (describing the public official designation as "broad" and citing cases in which several circuits have held police officers to be public officials); *Revell v. Hoffman*, 309 F.3d 1228, 1232-33 (10th Cir. 2002) (holding former FBI employee was public official); *Garcia v. Bd. of Educ. of Socorro Consol. Sch. Dist.*, 777 F.2d 1403,

1408 (10th Cir. 1985) (holding school board members' public officials and collecting cases where courts have found other city officials such as the "elected township tax assessor," a city commissioner, and a judge to be public officials).  Other courts have specifically found aides to prominent government officials to properly fall within the category of public officials.  *See, e.g.*, *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1301 (D.C. Cir. 1996) (libel plaintiff suing over statements concerning his time as an aide to a U.S. Senator found to be a public figure "having held various high-level positions" in government); *Hardin v. Santa Fe Reporter, Inc.*, 745 F.2d 1323, 1324 (10th Cir. 1984) (libel plaintiff "was a public official for purposes of the First Amendment because of his position as chief aide to the [State] Secretary of Corrections"); *De Falco v. Anderson*, 506 A.2d 1280, 1284 (N.J. Super. Ct. App. Div. 1986) (holding libel plaintiff who was a "former aide" to U.S. Congressman was a public figure).

The Plaintiff Harvey in this case is currently serving as a Senior Advisor to the ranking member of the House Permanent Select Committee on Intelligence and a former member of the National Security Council.  (ECF No. 1 ¶ 1.)  Before serving as a top aide to Nunes, Harvey spent twenty-six years working as an intelligence officer and Middle East Foreign Area Officer in the Army, moving to a position working for the Defense Intelligence Agency as a civilian in 2006.  (*Id.* ¶ 6.)  In 2017, Harvey was appointed to the National Security Council, and later than same year he began his work for Nunes.  (*Id.*)  These positions would appear to be positions involving substantial discretion and control of governmental affairs.  Further, the publicly available instant messages between Plaintiff Harvey and Defendant Parnas demonstrate that Harvey exercised significant discretion on behalf of Nunes, working directly with Parnas to coordinate interviews, hiring a staff lawyer for assistance, and making

suggestions such as how best to proceed with their investigation efforts. (*See* Ex. D, ECF No. 23-5.) In one message, the Plaintiff mentions that he has to do "Mueller stuff," clearly indicating his involvement in another high-profile government matter. (*Id.*) While some of this work was presumably done at the direction of Nunes, as the Fourth Circuit explained in *Hornes*, it is not necessary that all Harvey's work be performed with the kind of discretion that would invite public scrutiny. Given the perceivable and presumably actual importance of Harvey's current position, as well as his significant history of public service, including his appointment to the National Security Council, this Court considers Harvey to be a public official and was therefore required to plead actual malice in this case.

### E. Plaintiff fails to state a claim for false light against Defendant CNN

Under Maryland law, to succeed on a claim for false light, the plaintiff must show that (1) the defendant "g[ave] publicity to a matter concerning [the plaintiff] that place[d] the [plaintiff] before the public in a false light," (2) the false light would be highly offensive to a reasonable person," and (3) the defendant knew or recklessly disregarded "the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Ostrzenski v. Seigel*, 177 F.3d 345, 252 (4th Cir. 1999) (internal citations omitted). Additionally, "[a] false light claim 'may not stand unless the claim also meets the standards for defamation.'" *Ross v. Cecil Cty. Dep't of Soc. Servs.*, 878 F. Supp. 2d 606, 624 (D. Md. 2012) (citing *Crowley v. Fox Broad Co.*, 851 F. Supp. 700, 704 (D. Md. 1994). As explained above, Harvey's claims for defamation fail for numerous reasons. Therefore, his claim for false light fails as a matter of law as well.

## CONCLUSION

For the foregoing reasons, the Plaintiff Harvey's Complaint is DISMISSED pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction as to the individual Defendants Parnas and Bondy.   This dismissal must be WITHOUT PREJUDICE as this Court lacks jurisdiction as to these two individual defendants and has no power to dispose of any of the claims against them on the merits.  Accordingly, this dismissal is WITHOUT PREJUDICE to the Plaintiff Harvey seeking relief in other forums.

The Plaintiff's Complaint is DISMISSED pursuant to Rule 12(b)(6) with respect to the Defendant CNN for failure to state a claim upon which relief can be granted.  As a general rule, leave to amend a complaint to address deficiencies in an original complaint is freely given pursuant to Rule 15(a).  *See* Schwarzer, Wallace & Wagstaffe, *Federal Civil Procedure* § 9:286. Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before a dismissal of the case with prejudice.  *See Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003).  However, there is also authority that leave to amend does not need to be granted unless requested by the plaintiff.  *See Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555-56 (5th Cir. 2007); *see also* Schwarzer, Wallace & Wagstaffe, *Federal Civil Procedure* § 9:287.10.  Nevertheless, leave to amend may be denied if such amendment is deemed futile.  Schwarzer, Wallace & Wagstaffe, *Federal Civil Procedure* § 9:294.1; *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

The Plaintiff Harvey has alleged twenty defamatory statements.  He has failed to plausibly claim how any of these statements are legally defamatory, and twelve of them were apparently not published by the Defendant CNN.  The remaining eight statements are

privileged as a matter of law.  Nevertheless, if Plaintiff possesses facts to cure such manifest deficiencies addressed in this Memorandum Opinion, he may file an Amended Complaint within fifteen days of this Opinion, i.e. by March 4, 2021.[13]  Such an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment.  *Abaginin*, 545 F.3d at 742.  Accordingly, the Dismissal with respect to the Defendant CNN will be initially WITHOUT PREJUDICE.  If an Amended Complaint is not filed by March 4, 2021, the Clerk of this Court is instructed to CLOSE this case with a DISMISSAL WITH PREJUDICE.

A Separate Order follows.

Dated: Feb. 17, 2021.


_____/s/_____

Richard D. Bennett
United States District Judge

---

[13] Schwarzer, Wallace & Wagstaffe, *Federal Civil Procedure* § 9:289.  The time within which plaintiff must serve and file the amended complaint is ordinarily set by the court.