IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEREK J. HARVEY                                    )
                                                   )
            Plaintiff,                             )
                                                   )
v.                                                 )        Case No. 1:20-cv-03068-RGA
                                                   )
                                                   )        TRIAL BY JURY
CABLE NEWS NETWORK, INC.                           )        IS DEMANDED
                                                   )
            Defendant.                             )
                                                   )

# AMENDED COMPLAINT

Plaintiff, Derek J. Harvey ("Plaintiff"), by counsel, files the following Amended Complaint against Defendant, Cable News Network, Inc. ("CNN").

Plaintiff seeks (a) compensatory damages and punitive damages in a total sum to be determined by the Jury, and (b) court costs – arising out of Defendant's defamation and false light/invasion of privacy.

## I. INTRODUCTION

1.      Plaintiff is a retired United States Army Colonel, who lives and works in Maryland.  He serves as a Senior Advisor to the Ranking Member of the House Permanent Select Committee on Intelligence, Congressman Devin G. Nunes ("Nunes"). Plaintiff is a private individual.  Beginning in November 2019, CNN falsely accused Plaintiff of engaging and participating in a clandestine effort to aid and abet the commission of criminal, dishonest, deceitful and unethical conduct.  As evidenced by the swift condemnation of third-parties on Twitter, CNN's false statements exposed Plaintiff to public scorn, ridicule and contempt.  CNN attributed to Plaintiff statements he never

1

**Deleted:** [Washington County, Maryland]
c/o Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, VA 22903

**Deleted:**

**Deleted:** ____

**Deleted:**

**Deleted:**

**Deleted:** c/o Corporation Trust Company, R/A
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

LEV PARNAS
7670 La Corniche Cir.
Boca Raton, FL 33433

-and-

JOSEPH A. BONDY
1776 Broadway
Suite 2000
New York, NY 10019

**Deleted:** s

**Deleted:** s

**Deleted:** , Lev Parnas ("Parnas") and Joseph A. Bondy ("Bondy"), jointly and severally.

**Deleted:** the

**Deleted:** of $30,000,000.00,

**Deleted:** s'

**Deleted:** Defendants

**Deleted:** n

**Deleted:** and dishonest

**Deleted:** Defendants'

**Deleted:** Defendants

made and imputed to him conspiracy to deceive, deception, lack of integrity, and ethical improprieties that severely prejudiced Plaintiff in his employment as a congressional advisor and intelligence officer.

2.    On November 22, 2019, CNN published the following false and defamatory statements of or concerning Plaintiff:

**Deleted:** Between November 22, 2019 and September 8, 2020, Defendants

| No. | Defamatory Statement | Published By | Published To | Date |
|-----|----------------------|--------------|--------------|------|
| 1 | Nunes had "meetings … in Vienna last year with a former Ukrainian prosecutor to discuss digging up dirt on Joe Biden … Parnas was told directly by the former Ukrainian official that he met last year in Vienna with Rep. Devin Nunes … Nunes and three aides traveled to Europe from November 30 to December 3, 2018 … Nunes' entourage included retired colonel Derek Harvey … Nunes planned the trip to Vienna after Republicans lost control of the House in the mid-term elections … Mr. Parnas learned through Nunes' investigator, Derek Harvey, that the Congressman had sequenced this trip to occur after the mid-term elections yet before Congress' return to session, so that Nunes would not have to disclose the trip details to his Democrat colleagues in Congress … [S]hortly after the Vienna trip, [Parnas] and Harvey met at the Trump International Hotel in Washington, where they discussed claims about the Bidens" | CNN  CNN Wire | www.cnn.com  Twitter | 11/22/2019 |

**Deleted:** ¶
¶
Parnas/Bondy

**Deleted:** "

**Deleted:** ¶

| No. | Defamatory Statement | Published By | Published To | Date |
|---|---|---|---|---|
| 2 | "We understand from Mr. Lev Parnas' lawyer [Bondy] … that … last December, Devin Nunes, the senior Republican, presiding over the impeachment hearings, went to Vienna, and met with Victor Shokin … So, Shokin tells Lev Parnas … And what's interesting is that Nunes comes back and tries to recruit Lev Parnas.  He does recruit Lev Parnas to merge his effort, his and Rudy Giuliani's investigations, with his.  He has an aide [Plaintiff] meet with Lev Parnas, and they discuss how to reach out to … various Ukraine prosecutors, who might have information on the Bidens" | CNN | www.cnn.com<br><br>Twitter | 11/22/2019 |
| 3 | "The prosecutor who was the one at the center of all the controversy … met with Nunes in Vienna … last December.  Shokin then tells Parnas, the shady guy, at the center of all this … And then Nunes' staffer [Plaintiff] meets with Parnas … Well so does Nunes.  Nunes meets with Parnas.  Nunes speaks to Parnas several [times] … [a]bout dirt on the Bidens … [T]hey're asked to merge operations, essentially.  So, in other words, you know, this whole impeachment, Chris, is about a shadow foreign policy … That Devin Nunes appears to have … some involvement in …  So, he knew it was going on" | CNN | Cable TV<br><br>Twitter | 11/22/2019 |

**Deleted:** ¶
¶
CNN Wire¶
¶
Parnas/Bondy

**Deleted:** "Nunes planned the trip to Vienna after Republicans lost control of the House in the mid-term elections … Mr. Parnas learned through Nunes' investigator, Derek Harvey, that the Congressman had sequenced this trip to occur after the mid-term elections yet before Congress' return to session, so that Nunes would not have to disclose the trip details to his Democrat colleagues in Congress … [S]hortly after the Vienna trip, he and Harvey met at the Trump International Hotel in Washington, where they discussed claims about the Bidens"¶

**Deleted:** ¶
¶
Parnas/Bondy

**Deleted:** "We understand from Mr. Lev Parnas' lawyer [Bondy] … that … last December, Devin Nunes, the senior Republican, presiding over the impeachment hearings, went to Vienna, and met with Victor Shokin … So, Shokin tells Lev Parnas … And what's interesting is that Nunes comes back and tries to recruit Lev Parnas. He does recruit Lev Parnas to merge his effort, his and Rudy Giuliani's investigations, with his.  He has an aide [Plaintiff] meet with Lev Parnas, and they discuss how to reach out to … various Ukraine prosecutors, who might have information on the Bidens"¶
¶
¶
¶
¶

| No. | Defamatory Statement | Published By | Published To | Date |
|---|---|---|---|---|
| 4 | "Well, what's so intriguing, for want of a better word, about his whole trip was the timing of it. And, in fact, his aide, Derek Harvey told Lev Parnas that the timing of it was very deliberate. It was done right after the Republicans lost the House in the midterms, but before the Democrats took over in January. Why.  Because once the Democrats took over, he would have had to … disclose the details of it.  So, this is why nobody has known, until now, what Devin Nunes was doing last December" | CNN | Cable TV  Twitter | 11/22/2019 |
| 5 | "[T]he only thing that's reported in the Congressional record is that he, and Derek Harvey, and two other aides went to Europe.  But they don't say who they met with?  No.  And this was quite deliberate, according to my reporting, according to the lawyer speaking for Parnas [Bondy], Derek Harvey, the aide, told Parnas that the timing was done deliberately to keep it undercover" | CNN | Cable TV  Twitter | 11/22/2019 |

(each a "Defamatory Statement", and collectively, the "Defamatory Statements").

3.   CNN published the Defamatory Statements on a Friday evening during the height of the impeachment hearings conducted House Democrats.  CNN did not merely accuse Plaintiff of assisting Nunes in investigating a political rival of President Trump. CNN went much further.  CNN falsely accused Plaintiff of collusion, intentional concealment and participation in a "shadow foreign policy" operation.

**Deleted:** ¶
¶
Parnas/Bondy

**Deleted:** "The prosecutor who was the one at the center of all the controversy … met with Nunes in Vienna … last December.  Shokin then tells Parnas, the shady guy, at the center of all this … And then Nunes' staffer [Plaintiff] meets with Parnas … Well so does Nunes. Nunes meets with Parnas.  Nunes speaks to Parnas several [times] … [a]bout dirt on the Bidens … [T]hey're asked to merge operations, essentially.  So, in other words, you know, this whole impeachment, Chris, is about a shadow foreign policy … That Devin Nunes appears to have … some involvement in … So, he knew it was going on"¶

**Deleted:** ¶
¶
Parnas/Bondy

**Deleted:** "Well, what's so intriguing, for want of a better word, about his whole trip was the timing of it.  And, in fact, his aide, Derek Harvey told Lev Parnas that the timing of it was very deliberate.  It was done right after the Republicans lost the House in the midterms, but before the Democrats took over in January.  Why.  Because once the Democrats took over, he would have had to … disclose the details of it.  So, this is why nobody has known, until now, what Devin Nunes was doing last December"¶
¶
¶
¶
¶
¶
¶

**Deleted:** -------------------Page Break-------------------
-------------------Page Break-------------------
No.                                                           … [1]

**Deleted:** CNN, Parnas and Bondy published the Defamatory Statements as part of a broad smear campaign orchestrated by House Democrats and other powerful interests within the United States in the fall of 2019 to discredit Plaintiff (and Nunes) and to further the goal of impeaching the President…

4.    The millions who read the Defamatory Statements clearly understood them to convey a defamatory meaning, including that Plaintiff committed federal crimes, aided and abetted the commission of crimes, or otherwise engaged or participated in dishonest, deceptive, unethical and improper conduct.  On November 23, 2019, for instance, political operative Rick Wilson ("Wilson") concluded that "I periodically remind you that Derek Harvey is one of the cancerous tumors in the center of this stupid Nunes world." [https://twitter.com/TheRickWilson/status/1198251719022563329; *see id.* https://twitter.com/weRtroydavis/status/1198131718680506375 ("holy shit!  Go to 5:15 mark.   Intent to obstruct – Derek Harvey+Nunes explicitly planned their trip w Parnas/Shokin after GOP lost the House but before Dems took office as House Majority precisely so they'd only have to report the trip, but not disclose it's purpose or who they saw"); https://twitter.com/dcpoll/status/1199036637394681863 ("To sum up, Parnas, who was paid by Russian mobster Firtash, and, for more than a year, has worked closely with Trump personal lawyer Giuliani to dig up dirt on Biden for Trump's Ukraine extortion plot, was also working with Nunes on the same bribery scheme … Parnas is prepared to testify that in March, Nunes' aides scrapped a trip to Ukraine to meet with 2 officials for dirt on Biden when they realized it would mean notifying Schiff"); https://twitter.com/File411/status/1218930952849719298 ("Why hasn't House leadership temporarily yanked Nunes and his aide Derek Harvey clearances pending further investigation"); https://twitter.com/AhmedBaba_/status/1218319613731229697 ("This is further evidence that indicates Derek Harvey, a Nunes staffer, was not only fully aware but was complicit in the Ukraine extortion plot.").

5

**Deleted:** Each Defamatory Statement is of or concerning Plaintiff.

**Deleted:** be referring to Plaintiff and clearly understood them to

**Deleted:** , dishonest

**Deleted:** For instance, o

5.      The Defamatory Statements, viewed as a whole and in the context in which they were published, gravely injured Plaintiff's reputation.  CNN's falsely accused Plaintiff of publishing derogatory statements concerning Nunes – Plaintiff's superior.  CNN falsely reported that Plaintiff told Parnas that Nunes deliberately "sequenced" the trip to Vienna (a trip that never happened) "to occur after the mid-term elections yet before Congress' return to session, so that Nunes would not have to disclose the trip details to his Democrat colleagues in Congress".  CNN's false accusations were highly prejudicial to Plaintiff's employment.  Plaintiff never made these disparaging statements concerning his superior, and Nunes never did anything to deceive his colleagues in Congress.  The trip to Libya and Malta did not occur when it did because of any desire on anyone's part to avoid Congressional disclosure requirements.  In this case, Plaintiff seeks presumed damages, actual damages, special damages and punitive damages as a result of CNN's statements and actions.

**Deleted:**

**Deleted:** Defendants'

**Deleted:**  In addition, Plaintiff seeks a permanent injunction prohibiting Defendants from repeating the defamatory speech.…

## II.   PARTIES

6.      Plaintiff lives and works in Maryland.  He retired from the United States Army in 2006 after twenty-six (26) years of service as an intelligence officer and Middle East Foreign Area Officer ("FAO").  Plaintiff was one of Lt. General David Petraeus' most trusted intelligence advisors in Iraq.  He joined the Defense Intelligence Agency ("DIA") as a civilian in early 2006.  Plaintiff served in various capacities as an intelligence specialist and senior advisor.  Between 2013 and 2016, he taught at the University of South Florida.  In 2017, he was appointed to the National Security Council and, thereafter, he became a Senior Advisor to Congressman Nunes.  Plaintiff studied Islamic Law, Islamic Political Thought, Comparative Politics and International Relations

at the University of Utah, earning ABD status.  Plaintiff is a graduate of the Harvard University School of Government Intelligence and Policy Program.  He is endorsed by 148 professionals as highly skilled in the areas of Government, National Security and Intelligence.  Plaintiff's integrity, honesty, ethics, judgment, and performance are peculiarly valuable to him, and are absolutely necessary in his practice and profession.

The Defamatory Statements ascribe to Plaintiff statements he never made, conduct he never engaged in, and characteristics, including bias and deception, that would adversely affect his fitness to be an intelligence officer – conduct that could cost him his security clearance and subject him to discipline.

7.     Defendant CNN is a Delaware corporation, headquartered in Georgia. CNN is a division of WarnerMedia.  WarnerMedia is an operating segment of AT&T, Inc.  CNN is part of WarnerMedia's "Turner" business unit.  The Turner business unit operates television networks and related properties that offer branded news, entertainment, sports and kids multiplatform content for consumers in Maryland and around the world.   Turner's digital properties include the CNN digital network, www.cnn.com.  According to AT&T, the CNN digital network is "the leading digital news destination, based on the number of average monthly domestic multi-platform unique visitors and videostarts for the year ended December 31, 2018."  CNN's digital platforms deliver news 24 hours a day, seven days a week, from almost 4,000 journalists in every corner of the globe.  In addition to its massive digital footprint, CNN employs multiple social media accounts as a means to publish its statements in Maryland and worldwide.  As of November 22, 2019, **@CNN** had over 43,500,000 followers on Twitter and **@CNNPolitics** had over 2,900,000 followers.  In addition to CNN's corporate and

institutional use of Twitter, most of CNN's reporters use Twitter to spread stories to readers, viewers and voters in Maryland and elsewhere. [*See, e.g.,* **@jaketapper** (2,200,000 followers); **@mkraju** (453,600 followers)]. In addition to its massive digital and social media presence in Maryland, CNN broadcasts live every day to businesses and households across the State. One of those programs is "*Cuomo Prime Time*", a 9:00 p.m. nightly news program that "reports on the latest breaking news from Washington and around the world". According to Nielsen, *Cuomo Prime Time* is CNN's most-watched program among total viewers and adults 25-54 with an average of 1,000,000+/- viewers. [https://www.adweek.com/tvnewser/october-2019-ratings-cnn-posts-significant-year-over-year-audience-growth-bolstered-by-its-democratic-debate/419277/].

### III. JURISDICTION AND VENUE

8. The United States District Court for the District of Maryland has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1332 (Diversity) and § 1367 (Supplemental Jurisdiction). The parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. CNN is subject to personal jurisdiction in Maryland pursuant to Maryland Code, Courts and Judicial Proceedings ("CJP") § 6-103, as well as the Due Process Clause of the United States Constitution. CNN knew Plaintiff lived and worked in Maryland, targeted Plaintiff in Maryland and engaged in a persistent, continuous and ongoing course of defamation in and outside Maryland that injured Plaintiff in Maryland. CNN has minimum contacts with Maryland such that the exercise of personal jurisdiction over it comports with traditional notions of fair play and substantial justice and is

8

**Deleted:** ¶

**Deleted:** 8. Defendant Parnas is a citizen of Florida. Shortly before the Defendants published the Defamatory Statements, Parnas was indicted for federal crimes of conspiring to defraud the United States in violation of Title 18 U.S.C. § 371, making false statements to the Federal Election Commission ("FEC") in violation of Title 18 U.S.C. § 1001, and falsifying records in a Federal investigation in violation of Title 18 U.S.C. § 1519.¶
   9. Defendant Bondy is a citizen of New York. Bondy is an attorney, marijuana rights activist and blogger. He operates the Twitter account **@josephabondy**. At all times relevant to this action, Bondy served as a Parnas's lawyer. Parnas was also represented by Edward Brian MacMahon, Jr. ("MacMahon"), an attorney from Middleburg, Virginia. [https://macmahon-law.com/]. Bondy and MacMahon spoke often to the media and to self-styled "journalists" at Parnas's direction and on his behalf. Bondy and MacMahon published the Defamatory Statements about Plaintiff (detailed above in paragraph 2) with Parnas's full knowledge and actual or apparent authority.¶
   10. Seth Abramson ("Abramson") is a regular contributor to CNN. Abramson republished the Defamatory Statements online, on Twitter (**@SethAbramson**), and in a book entitled, "*Proof of Conspiracy*". [https://www.sethabramson.net/bio; https://lithub.com/how-deeply-involved-is-devin-nunes-in-the-conspiracy-to-discredit-joe-biden/; https://static.macmillan.com/static/smp/proof-of-corruption-notes/abramson-proof-of-corruption-notes.pdf]. Ryan Goodman ("Goodman") is a professor of law at New York University. Beginning in November 2019, Goodman published a series of false and defamatory statements about Plaintiff, including that "Nunes' close aide Harvey clandestinely worked with Parnas/Giuliani to get (read: create) Ukrainian dirt on Biden." [https://twitter.com/rgoodlaw/status/1218320813419646976]. Goodman republished the Defamatory Statements online, on Twitter (**@rgoodlaw**), on television, and in a blog entitled, "Just Security". [https://www.justsecurity.org/67480/timeline-rep-devin-nunes-aid-in/watch/nunes-now-implicated-in-ukraine-scandal-74141765953; https://www.msnbc.com/all-in/watch/nunes-now-implicated-in-ukraine-scandal-74141765953; https://twitter.com/rgoodlaw/status/1199728645604040705; https://twitter.com/rgoodlaw/status/1199729358015016960]…

**Deleted:** 11

**Deleted:** 12

**Deleted:** Defendants are

**Deleted:** Defendants, who

**Deleted:** Defendants have

**Deleted:** them

consistent with the Due Process Clause of the United States Constitution.  The general

thrust and content of the Defamatory Statements – which CNN wrote, produced, directed,

spoke in, edited, published and broadcast on multiple platforms that they operated –

manifests an intent to target and focus on Plaintiff and direct content to a Maryland

audience.  The focal point of CNN's accusations was alleged conduct by Plaintiff that

took in place in Maryland while Plaintiff served as a Senior Advisor to Congressman

Nunes who works in Washington, D.C.  The brunt of the harm, in terms of both of the

injury to Plaintiff's practice, profession and reputation, was suffered in Maryland, where

Plaintiff lives and works.  Plaintiff's claims directly arise from and relate to CNN's

publication and republication of false and defamatory statements in Maryland. *Calder v.*

*Jones*, 465 U.S. 783 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

10. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).  A

substantial part of the events giving rise to the claims stated in this action, including

publication and republication of Defamatory Statements and injury to Plaintiff, occurred

in the District of Maryland.

## IV.  STATEMENT OF FACTS

11. The Defamatory Statements are false for the following reasons:

a. Neither Plaintiff nor Nunes were in Vienna in 2018.  Between

November 30, 2018 and December 3, 2018, when CNN claims Nunes was in "Vienna",

Plaintiff and Nunes were actually in Libya and Malta.  Plaintiff and Nunes were part of a

delegation that traveled to Benghazi on a fact-finding mission in which they met with

General Haftar to discuss security issues both inside Libya and in the wider region.

During the same trip, Plaintiff and Nunes traveled to Malta, where Nunes met with Prime

**Deleted:** Defendants

**Deleted:** Defendants'

**Deleted:** Defendants'

**Deleted:** 3

**Deleted:** ¶
Page Break

**Deleted:** 4

**Deleted:** Defendants

Minister Joseph Muscat of Malta to discuss security and intelligence issues related to Malta, the European Union, and Libya.  At no time during the visits to Libya or Malta did Plaintiff or Nunes or any member of Nunes' staff ever meet any Ukrainians or have any discussions with anyone about Joe Biden or his son, Hunter Biden.

      b.     Nunes has never met Shokin; never spoken to Shokin; and never communicated with Shokin.  Shokin has publicly and repeatedly denied ever meeting Nunes.  Despite public denials by Nunes and multiple public denials by Shokin and his associates, CNN published and continued to publish (and refuse to retract) the Defamatory Statements.  Further, CNN chose to publish the false statements of a single source (Parnas) who had no first-hand knowledge of any conversations between Nunes and Shokin because no conversations ever took place.  CNN disregarded "red flags" and accepted the word of Parnas – a known liar, con man and hustler, and indicted criminal defendant, who CNN knew had every reason to lie.

      c.     Plaintiff never told Parnas, verbally or in writing, that Nunes had sequenced the trip to Europe to occur after the mid-term elections yet before Congress' return to session, so that Nunes would not have to disclose the trip details to his Democrat colleagues in Congress.  Plaintiff never told Parnas that the timing of the trip was "very deliberate" or that the trip was timed "to keep it undercover".  Plaintiff never informed Parnas, or anyone else that "they were investigating the activities of Joe and Hunter Biden related to Burisma".  There is no email, no text message, no document or other record that would corroborate CNN's false claims.  These Defamatory Statements, falsely attributed to Plaintiff, are materially false. *See, e.g., Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510-511 (1991) ("False attribution of statements to a

10

**Deleted:** Defendants

**Deleted:** , Bondy, MacMahon

**Deleted:** the Defendants'

**Deleted:** are

person may constitute libel, if the falsity exposes that person to … [hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation]… A fabricated quotation may injure reputation in at least two senses, either giving rise to a conceivable claim of defamation.  First, the quotation might injure because it attributes an untrue factual assertion to the speaker … Second, regardless of the truth or falsity of the factual matters asserted within the quoted statement, the attribution may result in injury to reputation because the manner of expression or even the fact that the statement was made indicates a negative personal trait or an attitude the speaker does not hold.") (citing *Selleck v. Globe International, Inc.*, 166 Cal.App.3d 1123, 1132, 212 Cal.Rptr. 838 (1985) ("Falsely ascribing statements to a person which would have the same damaging effect as a defamatory statement about him is libel"); *Kerby v. Hal Roach Studios, Inc.*, 53 Cal.App.2d 207, 213, 127 P.2d 577 (1942) ("A libel need not be a statement directly referring to a person and stating something defamatory about him.  It may as well be accomplished by falsely putting words into the mouth or attaching them to the pen of the person defamed and thus imputing to such person a willingness to use them, where the mere fact of having uttered or used the words would produce" harm to the plaintiff's reputation)); *Levesque v. Doocy*, 560 F.3d 82, 89-90 (1st Cir. 2009) (false attribution of comments to plaintiff encouraged listeners to form negative conclusions about plaintiff tending to harm his reputation).

> **Deleted:** ; *Nelson v. Time, Inc.*, 2014 WL 940448, at * 1 (Cal. App. 2014) ("If a jury believes Nelson did not make the statements attributed to him, it could conclude that defendants' false attribution was made with knowledge of the falsity or reckless disregard for the truth.  Accordingly, Nelson has established a prima facie case of defamation and false light"); *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890 (2013) ("*Saunders' statement of fact*—'Tharpe told me that Tharpe was going to screw the Authority like he did Fort Pickett'—if believed by the hearer as coming from Tharpe, by its very nature is alleged to have defamed Tharpe and Shearin.  Therefore, regardless of the truth or falsity of the matters asserted in the quote attributed to Tharpe, Saunders' statement is an actionable statement of fact.")…

        **d.**      **Plaintiff never discussed the Bidens with Parnas.**  Plaintiff never discussed with Parnas how to reach out to Ukrainian prosecutors to obtain information on the Bidens.  Neither Plaintiff nor Nunes asked to "merge operations" with Parnas or anyone else.  Neither Plaintiff nor Nunes ever engaged in any "shadow foreign policy" on

behalf of the Trump administration or anyone else.  These Defamatory Statements are
likewise falsely attributed to Plaintiff and are, therefore, substantially untrue.

> **Deleted:** they are untrue

     e.     Plaintiff was not part of and never joined any "group", including,
without limitation, the "BLT "team", that ever met at the Trump International Hotel in
Washington, D.C. to discuss "the Biden matter".

> **Deleted:** Prime T

> **Deleted:** ¶
> f.  No trips to Ukraine in 2019 were ever canceled or "scrapped" when Plaintiff or any other aide to Nunes "realized it would mean notifying Democratic Chairman Adam Schiff [or] alerting Schiff to their plans".  Plaintiff did not begin working with Parnas after any trip to "Vienna in late November" to "meet Shokin" because no such trip ever occurred.¶
> g.  Plaintiff was never involved in getting any documents or information on Joe or Hunter Biden and Plaintiff never lied to Congress or anyone else in this or any regard.¶
> h.  None of Plaintiff's texts or other messages were part of any effort to "dig up dirt on the President's political rivals" and no text or message drew Nunes – Plaintiff's superior – "even further" into any such efforts.¶
> i.  Plaintiff was not involved in any conspiracy or "plot" to "gather 'dirt' on Joe and Hunter Biden".¶
> j.  Plaintiff has never engaged in any conduct that would subject him to investigation by special counsel Robert Mueller or any branch of law enforcement, and Plaintiff did not engage in any unlawful conduct or play any role in any "scandal".¶
> k.  Parnas did not begin communicating with Plaintiff or Nunes in December 2018.  Plaintiff has no criminal record and never participated in any meetings with anyone at any time to discuss any conspiracy or the commission of any unlawful act.  Plaintiff was not behind any "aspect of the Ukraine scandal, from Naftogaz to outreach to Russian mafia to domestic disinformation", ever.¶
> 15.  Between February 2019 and May 2019, Plaintiff and Parnas exchanged messages about the House Intelligence Committee's investigation into Ukrainian interference in American politics, including efforts in 2016 to assist the "Clinton camp & FBI" to obtain damaging information on for Trump campaign manager, Paul Manafort. [https://judiciary.house.gov/uploadedfiles/document_production_lev _parnas_january_17_2020_whatsapp_excerpts_harvey_with_attach ments.pdf].  The messages were made public in January 2020 by Democrats on the House Intelligence Committee.¶
> 16.  Significantly, on April 17, 2019, Parnas sent Plaintiff websites with biographical information about Shokin, together with the following message: "This is the [Ukraine] general prosecutor that got fired by Biden." ¶      ... [2]

> **Deleted:** 7

> **Deleted:** 8

12.     CNN's Defamatory Statements are materially false.  There is a material
difference between CNN's false statements and the truth.  The Defamatory Statements
would have had (and indeed did have) a different effect on the minds of readers from that
which the truth would have produced.

13.     On August 12, 2019, after speaking *ex parte* with a Democratic staff
member of the House Intelligence Committee, an anonymous "whistleblower" filed a
complaint with Michael Atkinson, the Inspector General of the Intelligence Community
("Atkinson").  The anonymous complaint, based entirely on hearsay, states in part:

> In the course of my official duties, I have received information from multiple U.S. Government officials that the President of the United States is using the power of his office to solicit interference from a foreign country in the 2020 U.S. election.  This interference includes, among other things, pressuring a foreign country to investigate one of the President's main domestic political rivals.  The President's personal lawyer, Mr. Rudolph Giuliani, is a central figure in this effort.  Attorney General Barr appears to be involved as well.

14.     On September 24, 2019, the United States House of Representatives
announced an impeachment "inquiry" into U.S. President Donald Trump.  Between
October 3, 2019 and October 31, 2019, House Democrats conducted secretive interviews
in connection with the Democrats' impeachment inquiry.  On October 31, 2019, a divided
House of Representatives approved guidelines that cleared the way for nationally
televised impeachment hearings in mid-November 2019.

15.    On October 10, 2019, Parnas was arrested at Dulles International Airport

on federal charges that he schemed to funnel foreign money to U.S. politicians while

trying to influence U.S.-Ukraine relations.   At the time of his arrest, he had a one-way

ticket on a flight out of the country.   As a result of his arrest, Parnas's position as a

reliable source of information was compromised.

16.    On October 23, 2019, Parnas was released from custody on a $1,000,000

secured bond.  The District Court required Parnas to surrender his passport; restricted his

travel to Virginia and D.C. to meet with lawyers; placed him on home detention with

G.P.S. monitoring; and imposed multiple other restrictions on Parnas.   The Court's

complete lack of trust and confidence in Parnas, and the events of Parnas' indictment,

arrest, and bail disposition were matters of public record known to CNN and its

employees who published false statements about Plaintiff.

17.    Not long after his release from custody, Parnas began to concoct a plan to

promote fabricated stories about anti-Biden activities that would aid the Democrats in

their efforts to impeach President Trump.

18.    Parnas claimed that not long before Ukrainian President Zelensky was

inaugurated on May 20, 2019, he (Parnas) journeyed to Kiev to deliver a warning to the

country's new leadership.  Parnas stated that he told a representative of the incoming

Ukraine government that it had to announce an investigation into President Trump's

political rival, Joe Biden, and his son, Hunter Biden, or else Vice President Mike Pence

would not attend the swearing-in of the new president, and the United States would

freeze aid to Ukraine.

13

19.    The problem with Parnas' story, as was disclosed by the *New York Times*

on November 10, 2019, is that it was completely false.  Parnas' business partner (and co-

defendant in the pending criminal prosecution), Igor Fruman ("Fruman"), publicly

confirmed to the *New York Times* that "**Mr. Parnas's claim was false; the men never**

**raised the issues of aid or the vice president's attendance at the inauguration**".

[https://www.nytimes.com/2019/11/10/nyregion/trump-ukraine-parnas-fruman.html

(emphasis added)].

20.    CNN and its agents were aware of the *New York Times* report and

Fruman's direct attacks on Parnas' credibility.

21.    Parnas also made up stories about his connections with President Trump.

On or before November 15, 2019, Parnas told CNN reporter Vicky Ward ("Ward") that

when he attended a White House Hanukkah party with Rudolph Giuliani ("Giuliani") in

December 2018, they huddled together with the President privately.  Parnas stated that

President Trump gave him instructions for a secret "James Bond mission" to find

material on Joe Biden. [https://www.cnn.com/2019/11/15/politics/parnas-trump-special-

mission-ukraine/index.html].  In truth, Parnas and Fruman, posed for a one-minute photo

with the President, and walked away.

> "'He [Parnas] has said a few things lately that are completely untrue and provably
> untrue,' Mr. Giuliani said.  "I don't know what he's doing.  He claims we had a
> meeting with the president at the Hanukkah party, in December 2018.  Someone
> should remind Lev that there were five witnesses including his good friend, Igor
> Fruman, who all say categorically untrue.  Provably by records.  He's trying to
> make himself very important … We never had that meeting with the president."

Giuliani emphasized that:

**Deleted: 23**

**Deleted: 4**

**Deleted: 5**

He [Parnas] just made it up … What he said was, we had a long private meeting in which the president instructed him to do things.  False.  Untrue … His lawyer [Bondy] makes these comments that are not only untrue, they are provably untrue … He's getting very poor counsel."

[https://www.washingtontimes.com/news/2019/nov/26/fbi-file-lev-parnas-rolex-watches-5000-trump-memen/].

22.    *In addition to* CNN's actual knowledge (a) that Parnas had lied to the FEC (resulting in the Federal indictment and pending charges) and (b) that after his arrest, Parnas began circulating false and fantastical stories about a "warning" to Ukraine's new leadership and a "James Bond mission" – stories that were demonstrably false – CNN also knew from its review of "court filings" that a judgment had been entered by the United States District Court for the Eastern District of New York against Parnas in 2016, and that the judgment creditor had commenced proceedings in Florida in 2019 to collect the judgment.  [https://www.cnn.com/2019/10/29/politics/lev-parnas-republican-rudy-giuliani/index.html].   CNN knew from the court filings that the claim against Parnas resulted from his "deliberate, coercive and well-orchestrated scheme to steal $350,000 from Plaintiff by fraudulently inducing Plaintiff to enter into the Loan" [*See, e.g., Case 2:11-cv-05537-ADS-ARL (E.D.N.Y) (Document 1)*].

23.    CNN also knew from prior reporting that Parnas was a "hustler", and ***not*** in the "good way".  On October 23, 2019, CNN published a story, written by Ward, that highlighted the fact that Parnas' "business and networking activities over the past year had raised red flags with several prominent businessmen and their attorneys".  Ward noted many examples of Parnas' shady dealings:

15

Deleted: 6

Deleted: 7

"Bruce Marks, an attorney in Philadelphia who represents prominent Eastern Europeans, told CNN in recent days there was a Russian proverb that applied to Fruman and Parnas. 'Don't go in the forest if you're afraid of wolves,' Marks said. 'And **these guys, they just weren't wolves, I mean they were radioactive wolves.**'

…

South Florida attorney Robert Stok told CNN in an interview that Parnas and Fruman came to a wealthy client of his seeking money, claiming they were so short on cash they couldn't even pay for Parnas' newborn son's bris. Stok said the men asked Felix Vulis, a Russian-American natural resources magnate, if he could kick in some money for the event. They had also promised to open doors for Vulis through their connections to Giuliani and others … When they were slow to repay, Vulis sued. Vulis told their since-indicted associate David Correia over text message he had been ripped off, and that he planned to tell Giuliani, Ayers and others that Parnas and Fruman would face a lawsuit".

[https://www.cnn.com/2019/10/23/politics/parnas-fruman-hustle-profit-access-giuliani/index.html (emphasis added)].

24.    In  sum,  prior  to  November  22,  2019,  from  all  the  evidence  in  its possession, CNN knew that that Parnas was a renowned liar, a fraudster, a hustler, an opportunist with delusions of grandeur, a man in financial *in extremis* laboring under the weight of a $500,000 civil judgment, and an indicted Federal criminal defendant with a clear motive to lie.  CNN and Ward knew that Parnas was not just a wolf in sheep's clothing – Parnas was a "radioactive" wolf.

25.    Prior  to  November  22,  2019,  CNN  knew  that  Parnas  or  other  political operatives were shopping a story to the press that made claims about Plaintiff and Nunes, implicating them in efforts to get "dirt" on Joe Biden and his son, Hunter Biden.  CNN knew that no other news outlet would touch the scandalous story because *none* of the so-called "facts" provided could be verified.

26.    In  spite  of  its  actual  knowledge  of  Parnas'  pattern  of  fraud  and  false statements and in spite of serious doubts as to Parnas' credibility, veracity and the truth

Deleted: 8

Deleted:  (date of first Defamatory Statement)

Deleted: 9

Deleted: and his attorneys

Deleted: 30

and accuracy of his statements, CNN published Parnas's statements about Plaintiff as if they were true.  Although other media outlets immediately recognized Parnas' serious credibility issues [*see, e.g.*, https://www.msn.com/en-us/news/politics/giuliani-associate-lev-parnas-claims-to-have-hard-evidence-of-wrongdoing-for-trump-impeachment-inquiry/ar-BBXbRYu (**Parnas is "a dubious character who could make a problematic witness"**)], CNN ignored known "red flags" and proceeded to publish and broadcast the fake news sponsored by a "radioactive" wolf in sheep's clothing to millions of advertisers, subscribers, followers, and viewers in Maryland and elsewhere.

27.   On November 22, 2019, CNN published an article on its active digital network written by Ward. [https://www.cnn.com/2019/11/22/politics/nunes-vienna-trip-ukrainian-prosecutor-biden/index.html (the "CNN Article")].   The Article contained Defamatory Statement No. 1.

28.   The CNN Article was immediately understood to accuse and impute criminal wrongdoing, grossly unethical behavior and dishonesty, *see, e.g.*:



> **Michael Avenatti** ✔
> @MichaelAvenatti
>
> As I mentioned last night, neither Parnas nor his attorney @josephabondy are playing games. Nunes must be criminally prosecuted for the felony he committed and he should immediately be removed from the committee.

29.   On November 22, 2019 at 9:00 p.m., at the same time CNN published the CNN Article on its digital network, CNN broadcast Defamatory Statements Nos. 2, 3, 4, and 5 on the cable television program *Cuomo Prime Time*.  The broadcast reached millions of households in Maryland.

Deleted: 31

Deleted: s

Deleted: and 2

Deleted: 32

Deleted: 33

Deleted: and 6

30.    CNN coordinated publication of the false and defamatory statements about Plaintiff across each of its platforms.  In addition to its digital and cable television subscribers and viewers, CNN published the CNN Article to multiple new target audiences, including CNN's 32,000,000+ Facebook followers and CNN's 56,000,000+ Twitter followers in Maryland and around the World.  CNN's goal was to inflict maximum damage to Plaintiff's reputation Worldwide and to cause him to lose his position and his security clearance.  At the same time CNN tweeted the CNN Article, Ward and a whole host of other CNN employees, "analysts" and agents republished the CNN Article to their millions of Twitter followers.  The breadth of CNN's publications about Plaintiff is staggering.

31.    During an episode of *Reliable Sources* that aired on December 8, 2019, CNN's Brian Stelter ("Stelter") announced on air that "CNN is standing by its reporting". Stelter admitted that the allegations in the CNN Article were capable of a defamatory meaning.  Stelter stated that the meeting between Nunes and Shokin linked Nunes to the "pro-Trump, anti-Biden smear campaign that's at the center of the impeachment inquiry." [https://www.cnn.com/videos/business/2019/12/08/politicians-using-the-courts-to-punish-the-press.cnn/video/playlists/reliable-sources-highlights/].

32.    On January 18, 2020, One American News Network ("OANN") published an article entitled, "**Viktor Shokin: Parnas lied about Nunes' trip, might sue CNN**". [https://www.oann.com/viktor-shokin-parnas-lied-about-nunes-trip-might-sue-cnn/].  The article included a link to an exclusive interview with Shokin in Kiev, Ukraine.  During the interview, published on YouTube, Shokin told OANN Chief Washington Correspondent, Chanel Rion, that "Parnas is flat out lying … I never met Nunes.  Was

Deleted: 4

Deleted: 5

Deleted: CNN stood by the CNN Article and the statements broadcast to the country in *Cuomo Prime Time*.  On November 23, 2019, CNN reporter Marshall Cohen republished the contents of the CNN Article, adding that "it's possible now, it's possible that he [Nunes] was trying to do some digging of his own over there [in Vienna]". [http://transcripts.cnn.com/TRANSCRIPTS/1911/23/cnr.04.html].

Deleted: met with

Deleted:   Stelter published CNN's position and his statements concerning the CNN Article to his 680,000+ followers on Twitter. [https://twitter.com/brianstelter/status/1203787826137055243]….

Deleted: 6

never introduced to Nunes.  Never saw Nunes.  When Parnas made these claims I even looked into my passport just to check where I was.  I was nowhere near Vienna in that time period." [https://www.youtube.com/watch?v=USxwBUswI80].

33.    CNN purposefully avoided discovering the truth.  In spite of Shokin's unambiguous statements that he never met Nunes and was not in Vienna in December 2018 – statements that were published by the Washington Post in November 2019 and by OANN in January 2020 – CNN continued to publish its Defamatory Statements about Plaintiff.  CNN continues to publish the Defamatory Statements in spite of being informed of the statements' unambiguous falsity.  This is further evidence of CNN's actual malice.

34.    The Defamatory Statements, with express references to "Derek Harvey", Nunes' "aide", "staffer", and "investigator", have now been republished hundreds of millions of times, including by CNN and its agents and by many others in Maryland and elsewhere, *e.g.*:

> https://twitter.com/LawsuitsDevin/status/1198081018961387521
> ("Mr. Parnas learned through Nunes' investigator, Derek Harvey, that the Congressman had sequenced this trip to occur after the mid-term elections yet before Congress' return to session, so that Nunes would not have to disclose the trip details [...]" said Bondy);
>
> https://dccc.org/cnn-report-walls-closing-congressman-devin-nunes/
> ("Late last night, CNN reported that Rep. Devin Nunes worked with criminally indicted Giuliani-associate, Lev Parnas, to arrange a meeting in Vienna to discuss digging up dirt on one of the President Trump's political rivals.  **This new reporting would suggest that, for the first time, the efforts to dig up dirt on the President's political rivals involved a member of Congress – Rep. Devin Nunes.**  Not only was Rep. Nunes a Member of Congress, at the time of his European conspiracy quests but, he was **STILL** serving as the Chairman of the House Permanent Select Committee on Intelligence as he pressured a foreign government to dig up political dirt on a Democrat");

19

**Deleted:** 7

**Deleted:** 8

**Deleted:** , by Abramson and Goodman,

https://twitter.com/RepSpeier/status/1198333030496178177
("If Devin Nunes was using taxpayer money to do "political errands" in Vienna for his puppeteer, Donald Trump, an ethics investigation should be initiated and he should be required to reimburse the taxpayers");

https://secure.actblue.com/donate/arb_dd_search_1909_nunes?gclid=EAIaIQobChMIwcKpvKiV5gIVyODICh1BegNfEAAYASAAEgKHN_D_BwE
("**#DevinNunesGotCaught** Devin Nunes met with Ukrainians to get dirt on Joe Biden -- *he took part in Donald Trump's impeachable offense*")].

https://www.emptywheel.net/2019/11/23/the-proper-recipients-for-lev-parnas-allegations-are-the-ethics-committee-and-sdny/;

https://bangordailynews.com/2019/11/24/news/devin-nunes-could-face-ethics-investigation-over-alleged-meeting-with-ex-ukrainian-official/;

https://www.motherjones.com/politics/2019/12/the-nunes-crew-is-neck-deep-in-the-ukraine-scandal/;

https://www.dailykos.com/stories/2020/1/18/1912468/-Evidence-shows-that-Nunes-and-Staffer-were-Active-in-the-Ukraine-Scheme;

https://www.newser.com/story/285774/new-impeachment-evidence-ties-parnas-to-top-nunes-aide.html

**COUNT I – DEFAMATION**

35.   Plaintiff restates paragraphs 1 through 34 of this Complaint, and incorporates them herein by reference.

36.   CNN made, published and republished numerous false factual statements of or concerning Plaintiff.  These statements are detailed verbatim above in paragraph 2.

37.   CNN published the false statements without privilege of any kind.

38.   CNN's false statements constitute defamation *per se* and/or defamation *per quod*. *Collective Shared Services, LLC v. CPDA Canvass Network, LLC*, 2020 WL 1322944 (D. Md. 2020) (citing *Samuels v. Tschechtelin*, 135 Md. App. 483, 763 A.2d 209 (Md. App. 2000)).  The statements accuse and impute to Plaintiff the commission of

20

felonies and crimes involving moral turpitude and for which Plaintiff may be punished and imprisoned in a state or federal institution.   The statements impute to Plaintiff an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment, including collusion, deception, dishonesty, lack of candor, fraud and concealment, lack of ethics, self-dealing, conflicts of interest, lying about his superior, and other disqualifying actions.   CNN's false statements impaired, hurt, and prejudiced Plaintiff in his profession, impugned and disparaged his business reputation as a trustworthy, intelligent, and competent professional, exposed him to the hazard of losing his job, and rendered him unfit or less fit to fulfill the duties of a Senior Advisor to Nunes and Committee investigator.   CNN's false statements were neither fair nor in any way accurate.

39.     By publishing the Defamatory Statements on the Internet, by repeating them on television, and by tweeting the Defamatory Statements to the Twitter and Facebook universe, CNN knew or should have known that the Defamatory Statements would be republished over and over by third-parties to Plaintiff's detriment.   Indeed, there have been hundreds of millions of republications to date.   Republication by both CNN subscribers and viewers and by Twitter users was the natural and probable consequence of CNN's actions and was actually and/or presumptively authorized and intended by CNN.   In addition to their original publications online, on air, and on Twitter, CNN is liable for the republications of the Defamatory Statements by third-parties under the republication rule. *Reuber v. Good Chemical News, Inc.*, 925 F.2d 703, 712 (4ᵗʰ Cir. 1991) ("one who repeats a defamatory statement is as liable as the original defamer."), *cert. denied*, 111 S. Ct. 2814 (1991) (citing *Lee v. Dong-A Ilbo*, 849 F.2d 876, 878 (4ᵗʰ

21

| Deleted: Defendants' |
| Deleted: |
| Deleted: Defendants' |
| Deleted: |
| Deleted: 43 |
| Deleted: including on *Cuomo Prime Time* and on MSNBC's *Rachel Maddow Show* (https://www.msnbc.com/rachel-maddow-show/parnas-accuses-devin-nunes-being-involved-anti-biden-effort-n1117601), … |
| Deleted: Defendants |
| Deleted: |
| Deleted: , including those by Abramson and Goodman |
| Deleted: , such as Abramson and Goodman, |
| Deleted: the Defendants' |
| Deleted: the Defendants |
| Deleted: Defendants are |

Cir. 1988)); *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60-61 (2nd Cir. 1980) (discussing the "black-letter rule that one who republishes a libel is subject to liability just as if he had published it originally, even though he attributes the libelous statement to the original publisher, and even though he expressly disavows the truth of the statement.") (quotation marks and citation omitted); *Watson v. NY Doe 1*, 439 F.Supp.3d 152, 161 (S.D.N.Y. 2020) ("[a] speaker who repeats another's defamatory statements is not made immune from liability for defamation merely because another person previously made the same demeaning claim.") (quoting *Enigma Software Group USA, LLC v. Bleeping Computer, LLC*, 194 F.Supp.3d 263, 287 (S.D.N.Y. 2016) (collecting cases)); *Butowsky v. Folkenflik*, 2019 WL 2518833, at * 13 (E.D. Tex. 2019) ("It is a well-settled legal principle that one is liable for republishing the defamatory statement of another.") (citing *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 386 (1973) (a "newspaper may not defend a libel suit on the ground that the falsely defamatory statements are not its own")); *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1298-1299 (D.C. Cir. 1988) ("The common law of libel has long held that one who republishes a defamatory statement 'adopts' it as his own, and is liable in equal measure to the original defamer") (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* 799 (5th ed. 1984) ("Every repetition of the defamation is a publication in itself, even though the repeater states the source ... or makes clear that he himself does not believe the imputation.") (footnotes omitted), *cert. denied*, 488 U.S. 825 (1988).

    40.    CNN negligently published the words of a known "radioactive" wolf in sheep's clothing.  CNN failed to exercise reasonable care to verify Parnas's story.  CNN

22

failed speak with Shokin prior to publication, in spite of the fact that CNN knew his number and Shokin was very easy to locate.   Before publication, CNN had no independent evidence to corroborate Parnas's inherently unbelievable story, and, indeed, none exists.   Even after CNN learned that Shokin never met or spoke with Nunes, and, thus, the "Vienna" story was fabricated, CNN's chief media correspondent, Stelter, insisted that CNN continued to "stand by its reporting".   CNN lacked reasonable grounds for any belief in the truth of its statements, and acted negligently in failing to determine the true facts.   CNN's false statements harmed Plaintiff and his reputation.

> **Deleted:** Defendants
>
> **Deleted:** Defendants
>
> **Deleted:** their
>
> **Deleted:** Defendants'

41.   CNN published the Defamatory Statements with knowledge that they were false or with reckless disregard for whether they were false.   CNN acted with actual malice and reckless disregard for the truth for the following reasons:

> **Deleted:** 5
>
> **Deleted:** Defendants
>
> **Deleted:** Defendants

a.   The sole "trusted" source of the fake news story was a man indicted by the United States Government, charged with multiple Federal crimes – a man who faced years in a Federal penitentiary – Parnas.   There were obvious reasons to doubt the veracity and accuracy of any information Parnas provided.   CNN and Ward's own prior reporting demonstrated that Parnas was a fraudster and a hustler with "serious" credibility problems.   CNN's Chief Washington Correspondent and anchor of *The Lead*, Jake Tapper ("Tapper"), admitted on national television that:

> **"We can't ignore – Parnas has a serious credibility problem.   He's under indictment for campaign finance charges.   The foreign minister of Ukraine told CNN's Christine Amanpour that he doesn't trust a word Parnas is saying.   And yet I see people out there on social media – Democrats – acting as if this guy is the second coming of Theodore Roosevelt or something".**

[https://www.cnn.com/videos/politics/2020/01/16/jake-tapper-lev-parnas-credibility-roosevelt-vpx.cnn;        https://www.cnn.com/videos/world/2020/01/16/vadym-prystaiko-

ukrainian-foreign-minister-lev-parnas-amanpour-vpx.cnn ("And again, frankly, I don't trust any word he [Parnas] is now saying")].  In spite of the fact that CNN's sole source was a known liar, a fraudster, "radioactive" wolf in sheep's clothing, and an indicted criminal defendant with a known motive to lie, CNN published Parnas's false and defamatory statements about Plaintiff with a reckless, heedless and palpable indifference as to the consequences.  Prior to publication, CNN, in fact, entertained serious doubts as to both the veracity of its sole source, Parnas, and the truth and accuracy of the statements in the CNN Article.    In spite of these serious doubts, CNN published Parnas's demonstrably false statements as if they were true.  CNN directly endorsed Parnas and vouched for the truth of the statements.  CNN knew Parnas was an unreliable source. CNN failed to reasonably assess the veracity of its sole source prior to publication. *E.g.,* *Wells v. Liddy*, 2002 WL 331123, at * 4-5 (4th Cir. 2002); *id. Curtis Publishing Co. v. Butts*, 388 U.S. 130, 157 (1967) ("The Saturday Evening Post knew that Burnett [the source] had been placed on probation in connection with bad check charges, but proceeded to publish the story on the basis of his affidavit without substantial independent support").

   b. CNN misrepresented the extent of its investigation and knowledge, misrepresented that it had verified Parnas' story (when, in truth, it had no reason to believe Parnas and had not verified any part of Parnas' claims), and deliberately minimized the credibility problems of its sole source.  CNN knew its statements were materially false and misleading, and possessed information that demonstrated the falsity of its statements.

**Deleted:** It was obvious that Parnas's lies were part of a thinly-veiled attempt to obstruct justice and to trick either the United States Attorney or House Intelligence Committee Chairman, Schiff, into offering "immunity" or favorable treatment in return for scandalous "information" about Plaintiff and Nunes – a prominent United States Congressman and Ranking Member of the House Intelligence Committee. …

**Deleted:** including knowledge of Parnas and his attorneys' motive to lie about Plaintiff and Nunes, …

**Deleted:** *Compare, e*

c.      In the midst of the impeachment hearings, CNN conceived the story line in advance of any investigation and then consciously set out to publish statements that fit the preconceived story in order to disparage, discredit and embarrass Plaintiff.

d.      CNN deliberately ignored known source material, including Parnas' phone records, that would have demonstrated that Parnas' statements were absolutely false.  In light of its serious doubts as to Parnas' veracity and credibility and in light of the ease with which the *Washington Post* and OANN found Shokin, CNN's failure to interview Shokin can only be seen as a deliberate evasion or avoidance of the truth. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 682 (1989) (a clear evasion from the truth and the failure to interview an important witness, who was easily accessible, supports a finding of actual malice).

e.      CNN and its reporters, editors and publishers abandoned all journalistic standards and integrity, including CNN's own code of ethics, in writing, editing, producing and publishing the CNN Article and the Cuomo/Ward/Hill broadcast. CNN was grossly negligent.  CNN did not seek the truth or report it.  CNN betrayed the truth for the sake of its political and ideological slant, and institutional bias against President Trump and Nunes, and in the pursuit of manufacturing a sensational story. *Tomblin v. WCHS-TV8*, 2011 WL 1789770, at * 5 (4th Cir. 2011) (unpublished) ("on the question of whether WCHS-TV8 deliberately or recklessly conveyed a false message to sensationalize the news and thus to provide factual support for a finding of malice, there are disputed facts").  CNN did not confirm facts and verify Parnas' information before releasing it.  The CNN Article was nothing less than opposition research.  CNN rushed to

get the story out in order to blunt the disastrous spectacle of the House Democrats' impeachment inquiry, and to hurt the leader of the Republican opposition. CNN blindly ascribed to Plaintiff statements he never made, hurt Plaintiff's relationship with Nunes, misrepresented facts and oversimplified issues in promoting the fake news story. In spite of multiple reports confirming that Shokin never met with Plaintiff, CNN refused (and refuses) to update or correct its story. CNN withheld from the public key pieces of information about Parnas that bore directly upon his veracity, reliability and motivations. CNN deliberately distorted facts to support its false narrative that Plaintiff concealed from the House Intelligence Committee a clandestine effort to "dig up dirt on the Bidens". Rather than minimize harm, CNN set out to inflict maximum pain and suffering on Plaintiff and Nunes in order to support the impeachment effort and to undermine due process and the search for the truth. In promoting fake news about secret meetings in Vienna with a corrupt former Ukraine prosecutor, CNN pandered to lurid curiosity. CNN never once considered the long-term implications of the extended reach and permanence of its various online, on air, and social media publications. CNN abjectly failed to act independently. Rather, it accepted and published the false statements of an indicted criminal, a known fraudster, known liar, known hustler, with a motive to lie. CNN knew that other media outlets refused to take the bait. CNN eagerly published Parnas' lies because it meant helping the House Democrats' impeachment cause. CNN refuses to be accountable; refuses to acknowledge its mistakes; refuses to retract; refuses to correct; refuses to clarify; and refuses to apologize.

    f.      CNN shows no remorse. It continues to publish the statements in the face of unambiguous evidence of falsity, including Shokin's statements to the

26

**Deleted:**

**Deleted:** [https://cnnsoc185.wordpress.com/vision-statement/; https://www.warnermediagroup.com/company/corporate-responsibility/telling-the-worlds-stories/journalistic-integrity; https://www.spj.org/ethicscode.asp]…

*Washington Post* and his interview with OANN.  It is obvious that CNN was and is out to get Plaintiff, destroy his reputation and impair his ability to serve as Senior Advisor to the Ranking Member of the House Intelligence Committee.  As Jake Tapper's admissions demonstrate, CNN knew that it erred in relying on sole-source-Parnas; yet CNN and its parent, AT&T, refuse to acknowledge the error or retract the false statements.

    g.  CNN intentionally employed a scheme or artifice to defame Plaintiff.  CNN acted intentionally, purposefully and in concert with Parnas to accomplish an unlawful purpose through unlawful means, without regard for the Plaintiff's rights and interests.  CNN chose to manufacture and publish false and scandalous statements and use insulting words, in order to foment controversy, undermine public confidence in Plaintiff, and hinder him from performing his duties as Senior Advisor to Nunes.  The ulterior purpose of the CNN Article was to advance the impeachment inquiry, to seed doubt in the minds of Americans, and to influence the outcome of the 2020 election.

    h.  The words chosen by CNN and its agents evince their ill-will, spite and actual malice.

    i.  CNN, acting in concert with Parnas, manufactured the claims about Plaintiff out of whole cloth.  In the total absence of evidence, CNN could not have had an honest belief in the truth of its statements about Plaintiff or in the veracity of Parnas.

    j.  CNN reiterated, repeated and continued to republish the false defamatory statements about Plaintiff out of a desire to hurt Plaintiff and to permanently stigmatize him, even after CNN learned that Parnas had lied.

k.      CNN disregarded communications by Nunes and others that the story was "demonstrably false", and continues to stand by "news" that it knows is fake.

42.     As a direct result of CNN's defamation, Plaintiff suffered presumed damages and actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, anxiety, mental suffering, injury to his reputation, loss of income, diminished future earning capacity, pecuniary loss and other special damages, costs, and out-of-pocket expenses, in a sum to be determined by the Jury.  As a result of CNN's willful, wanton, and malicious conduct in the publishing of the Defamatory Statements, Plaintiff is entitled to punitive damages in the maximum amount allowed by law.

**COUNT II – FALSE LIGHT INVASION OF PRIVACY**

43.     Plaintiff restates paragraphs 1 through 42 of this Complaint, and incorporates them herein by reference.

44.     By publishing the CNN Article online, in print and via social media, by appearing on television, and by causing the republication of the Defamatory Statements by third-parties, CNN generated substantial publicity about the false statements of or concerning Plaintiff.  CNN ascribed to Plaintiff statements that he never made – statements that portrayed Plaintiff as being a criminal, dishonest, immoral, unethical and aiding and abetting fraud and deception.  CNN placed Plaintiff in a false light that would be offensive to any reasonable person.

45.     CNN had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed by the false statements.

28

46.    CNN's actions constitute a false light invasion of Plaintiff's privacy under the common law of Maryland.

47.    As a direct result of CNN's false light invasion of privacy, Plaintiff suffered presumed damages and actual damages, including, but not limited to, insult, pain, embarrassment, humiliation, anxiety, mental suffering, injury to his reputation, loss of income, diminished future earning capacity, pecuniary loss and other special damages, costs, and out-of-pocket expenses, in a sum to be determined by the Jury.  As a result of CNN's willful, wanton, and malicious conduct in placing Plaintiff in a false light, Plaintiff is entitled to punitive damages in the maximum amount allowed by law.

**COUNT III – <u>PUNITIVE DAMAGES</u>**

48.    Plaintiff restates paragraphs 1 through 47 of this Complaint, and incorporates them herein by reference.

49.    CNN is liable to Plaintiff for the torts of defamation and false light/invasion of privacy.

50.    Plaintiff is entitled to a award of punitive damages against CNN in a total amount to be determined by the Jury, for the following reasons:

      a.    CNN deliberately fabricated facts in order to harm Plaintiff.

      b.    CNN published the Defamatory Statements with actual knowledge that the statements were false.

      c.    The false statements employed in CNN's defamation scheme, the manner and modes of publication, the breadth of publication and republication, and the excessive frequency of the publications and republications evince CNN's evil motive and conscious and deliberate wrongdoing.

---

Deleted: 50
Deleted: Defendants'
Deleted: 51
Deleted: Defendants'
Deleted: the
Deleted: of $25,000,000 or such greater amount as is
Deleted: Defendants'
Deleted: sum of $5,000,000, or the
Deleted: 52
Deleted: 51
Deleted: 53
Deleted: Defendants
Deleted: are each
Deleted: 4
Deleted: each Defendant
Deleted: the amount of $5,000,000, or such great amount as is determined by the j
Deleted: j
Deleted: Defendants
Deleted: Defendants
Deleted: Defendants'
Deleted: Defendants'

Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession.  Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of CNN, Parnas and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves his right to amend this Complaint upon discovery of additional instances of CNN's wrongdoing.

**CONCLUSION AND REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Derek J. Harvey respectfully requests the Court to enter Judgment against Defendant CNN as follows:

A.    Compensatory damages in an amount to be determined by the Jury;

B.    Punitive damages in the maximum amount allowed by law;

C.    Costs, expenses, interest, attorneys' fees, and other recoverable amounts as allowed by law;

D.    Such other relief as is just and proper.

**TRIAL BY JURY IS DEMANDED**

DATED:    March 4, 2021.

30

---

Deleted: **COUNT IV – INJUNCTION**¶
55.  Plaintiff restates paragraphs 1 through 54 of this Complaint, and incorporates them herein by reference.¶
56.  Defendants, acting in concert, disseminated false and defamatory statements that caused irreparable harm to Plaintiff. Plaintiff is unable to repair his reputation with the persons that Defendants unilaterally contacted, especially the millions of CNN subscribers and viewers and millions more on Twitter whose identities are unknown.¶
57.  Monetary damages will not provide an adequate remedy for Plaintiff because, in the event Defendants continue to defame Plaintiff, he would be required to bring a succession of lawsuits to deter Defendants from continuing to defame Plaintiff.  Monetary damages may not effectively deter "judgment proof" or wealthy defendants.¶
58.  In light of the balance of the hardships between Plaintiff and Defendants, a remedy in equity is warranted because Defendants remain able to express themselves in a manner that does not repeat the Defamatory Statements.¶
59.  The public interest would be served by an injunction narrowly tailored to prohibit repetition of the statements set forth in paragraph 2 that qualify as defamatory under Maryland law because such an injunction does not threaten to silence Defendants completely.¶
60.  Because Defendants have engaged in repeated acts of defamation *per se*, and the defamatory conduct at issue threatens to continue in the future, as evidenced by Parnas and Bondy's most recent tweets, Defendants should be permanently restrained and enjoined from publishing the Defamatory Statements set forth in paragraph 2 to recipients in and outside Maryland by mail, wire, email, text message, encrypted or private message, or social media.¶
¶

Deleted: , Bondy, MacMahon,

Deleted: Defendants'

Deleted: s

Deleted: , Parnas and Bondy, jointly and severally,

Deleted: the

Deleted: of $25,000,000 or such greater amount as is

Deleted: amount of $5,000,000 or the

Deleted: C.   Postjudgment interest at the rate of six percent (6%) per annum until paid;¶
D.   Injunctive relief as requested in Count IV above;¶
E

Deleted: F

Deleted: October 21, 2020

Deleted: Signature of Counsel on Next Page¶

DEREK J. HARVEY


By:     */s/ Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:  (804) 501-8272
        Facsimile:  (202) 318-4098
        Email:  stevenbiss@earthlink.net
        (*Admission Pro Hac Vice*)

        Joseph L. Meadows (Bar No. 15856)
        Bean, Kinney & Korman, P.C.
        2311 Wilson Boulevard, Suite 500
        Arlington, Virginia 22201
        Telephone:  (703) 525-4000
        Facsimile:  (703) 525-2207
        Email:  jmeadows@beankinney.com

        *Counsel for the Plaintiff*



**Deleted:**     DEREK J. HARVEY¶
¶
¶
¶
By:   */s/ Joseph L. Meadows*            ¶
     Joseph L. Meadows (Bar No. 15856) ¶
     Bean, Kinney & Korman, P.C.¶
     2311 Wilson Boulevard, Suite 500¶
     Arlington, Virginia 22201¶
     Telephone:  (703) 525-4000¶
     Facsimile:  (703) 525-2207¶
     Email:     jmeadows@beankinney.com¶
¶
     Steven S. Biss (VSB # 32972)¶
     300 West Main Street, Suite 102¶
     Charlottesville, Virginia 22903¶
     Telephone:  (804) 501-8272¶
     Facsimile:  (202) 318-4098¶
     Email:     stevenbiss@earthlink.net¶
     (*Motion for Admission Pro Hac Vice*)
     *To be Filed*)¶
¶
     *Counsel for the Plaintiff*¶
¶

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2021 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.


By:    */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:  (804) 501-8272
Facsimile:  (202) 318-4098
Email:  stevenbiss@earthlink.net
(*Admission Pro Hac Vice*)

Joseph L. Meadows (Bar No. 15856)
Bean, Kinney & Korman, P.C.
2311 Wilson Boulevard, Suite 500
Arlington, Virginia 22201
Telephone:  (703) 525-4000
Facsimile:  (703) 525-2207
Email:  jmeadows@beankinney.com

*Counsel for the Plaintiff*

Deleted: ¶